*1048313298*

**IN THE DISTRICT COURT FOR CANADIAN COUNTY**

**STATE OF OKLAHOMA**

FILED
IN THE FIRST COURT CLERK
CANADIAN COUNTY, OKLAHOMA

DEC 2 1 2020

BY _____
DEPUTY

| | |
|---|---|
| RONDA MOSS | ) |
| MELISSA MCCLAIN | ) |
| ERIN BARTON | ) |
| ROBERT FLETCHER | ) |
| DONNA WEHMULLER | ) |
| PLAINTIFFS | ) |
| | ) |
| VS | ) |
| | ) |
| CANADIAN COUNTY EX REL THE | ) |
| BOARD OF COUNTY COMMISSIONERS, | ) |
| | ) |
| JUDGE BOBBY HUGHEY, individually and | ) |
| in his official capacity as the Associate | ) |
| District Judge and Director of the Canadian | ) |
| County Children's Justice Center and | ) |
| Juvenile Bureau | ) |
| DANIEL KERN, individually and in his | ) |
| official capacity as the Facility Director of the | ) |
| Canadian County Children's Justice Center. | ) |
| NACOLE MAJORS, individually and in her | ) |
| official capacity as the Human Resources | ) |
| Director for Canadian County | ) |
| DEFENDANTS | ) |

CASE NO: CJ-2020- 617

JURY TRIAL DEMANDED
ATTORNEY'S LIEN CLAIMED

CASE ASSIGNED TO:
JACK D. McCURDY II

JUDGE: _____

**PETITION**

**COME NOW**, the Plaintiffs, Ronda Moss, Melissa McClain, Erin Barton, Robert Fletcher, and Donna Wehmuller, individually and for their claims against Canadian County ex rel the Board of County Commissioners, Judge Bobby Hughey, individually and in his official capacity, and Daniel Kern, individually and in his official capacity, and NaCole Majors, individually and in her official capacity and for their causes of action allege and state as follows:

I.  **JURISDICTIONAL ALLEGATIONS**

A.  **Residency and Venue**

1.  Ronda Moss is a citizen of the state of Oklahoma and a resident of Canadian County.

2.  Melissa McClain is a citizen of the state of Oklahoma and a resident of Canadian County.

3.  Erin Barton is a citizen of the state of Oklahoma and a resident of Canadian County.

1

EXHIBIT 3

4.  Robert Fletcher is a citizen of the state of Oklahoma and a resident of Canadian County.

5.  Donna Wehmuller is a citizen of the state of Oklahoma and a resident of Canadian County.

6.  Canadian County is a political subdivision of the State of Oklahoma managed by and through the Board of County Commissioners who are duly elected by the people of Canadian County.

7.  Judge Bobby Hughey is a citizen of the state of Oklahoma and a resident of Canadian County.

8.  Judge Bobby Hughey is the duly elected Associate District Judge of Canadian County, 26th Judicial District for the State of Oklahoma, having last been elected in November 2018.

9.  Judge Bobby Hughey is an employee of the Oklahoma District Courts for the State of Oklahoma.

10. Venue is proper against the District Courts in Oklahoma County.

11. The Gary E. Miller Canadian County Children's Justice Center is a Department under the fiscal umbrella of Canadian County. The Children's Justice Center's fiscal matters fall under the County Purchasing Act in the Oklahoma Statute. Canadian County has three elected County Commissioners who are responsible for these operations.

12. Marc Hader is the Canadian County Commissioner for District 1 and is a resident of Canadian County.

13. Dave Anderson is the Canadian County Commissioner for District 2 and is a resident of Canadian County.

14. Jack Stewart is the Canadian County Commissioner for District 3 and is a resident of Canadian County.

15. Daniel Kern was the Facility Director for the Canadian County Children's Justice Center from March 2019 until his termination from employment on or about November 2019.

16. On information and belief Daniel Kern is a citizen of the state of Oklahoma and a resident of Oklahoma County.

17. NaCole Majors is the Human Resources Director for Canadian County and on information and belief is a resident of Canadian County.

18. All of the acts complained of occurred in Canadian County Oklahoma in and around the District Court for Canadian County, the Canadian County Children's Justice Center, and the Canadian County Building.

19. This action includes complaints of civil rights violations brought pursuant to Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in

EXHIBIT 3

Employment Act, the Oklahoma Anti-Discrimination Act, the United States Constitution, 42 USC § 1983, and the laws of the State of Oklahoma.

20. This matter will be amended, and additional claims added upon the expiration of the waiting period pursuant to the Oklahoma Governmental Tort Claims Act, 51 OS §155 et seq.

## B.   PRE-SUIT ADMINISTRATIVE REQUIREMENTS AS TO EACH PLAINTIFF:

### a.   RONDA MOSS

21. Moss filed an intake with the EEOC on October 15, 2019 alleging discrimination in her employment with Canadian County by and through Judge Bobby Hughey, Daniel Kern, and the Board of County Commissioners of Canadian County.

22. Moss filed a Charge of Discrimination with the EEOC on March 24, 2020.

23. The EEOC issued the Dismissal and Notice of Rights on September 23, 2020.

24. This suit was filed within ninety (90) days from the date of the Notice of Rights.

25. Moss filed a tort claim with Canadian County on October 15, 2020.

26. As of the date of this filing, the tort claim has not yet been denied and the period for denial has not yet expired.

27. Moss's employment was terminated on October 17, 2019.

28. Moss is a Caucasian female over the age of forty (40).

### b.   MELISSA MCCLAIN

29. McClain filed an intake with the EEOC on October 15, 2019 alleging discrimination in her employment with Canadian County by and through Judge Bobby Hughey, Daniel Kern, and the Board of County Commissioners.

30. McClain filed a Charge of Discrimination with the EEOC on March 26, 2020.

31. McClain filed an Amended Charge of Discrimination with the EEOC in June 2020.

32. The EEOC issued the Dismissal and Notice of Rights on September 23, 2020.

33. This suit was filed within ninety (90) days from the date of the Notice of Rights.

34. McClain filed a tort claim with Canadian County on October 15, 2020.

35. As of the date of this filing, the tort claim has not yet been denied and the period for denial has not yet expired.

EXHIBIT 3

36. McClain is a Caucasian female over the age of forty (40).

### c.  ROBERT FLETCHER

37. Fletcher filed an intake with the EEOC on or about March 27, 2020 alleging discrimination in his employment with Canadian County by and through Judge Bobby Hughey, Daniel Kern, and the Board of County Commissioners.

38. The EEOC issued the Dismissal and Notice of Rights on September 23, 2020.

39. This suit was filed within ninety (90) days from the date of the Notice of Rights.

40. Fletcher filed a second charge with the EEOC in October 2020 following his termination. As of the filing of this suit no right to sue letter has been issued on the second charge.

41. Fletcher filed a tort claim with Canadian County on November 12, 2020.

42. As of the date of this filing, the tort claim has not yet been denied and the period for denial has not yet expired.

43. Fletcher's employment was terminated on October 10, 2020.

44. Fletcher is a Caucasian male over the age of forty (40).

### d.  ERIN BARTON

45. Barton filed an intake with the EEOC in the fall of 2019 alleging discrimination in her employment with Canadian County by and through Judge Bobby Hughey, Daniel Kern, and the Board of County Commissioners.

46. Barton filed a Charge of Discrimination with the EEOC on March 26, 2020.

47. The EEOC issued the Dismissal and Notice of Rights on September 23, 2020.

48. This suit was filed within ninety (90) days from the date of the Notice of Rights.

49. Barton filed a tort claim with Canadian County on November 12, 2020.

50. As of the date of this filing, the tort claim has not yet been denied and the period for denial has not yet expired.

51. Barton is a Caucasian female over the age of forty (40).

### e.  DONNA WEHMULLER

52. Wehmuller filed an intake with the EEOC alleging discrimination in her employment with Canadian County by and through Judge Bobby Hughey, Daniel Kern, and the Board of County Commissioners.

EXHIBIT 3

53. Wehmuller filed a Charge of Discrimination with the EEOC on March 24, 2020.

54. The EEOC issued the Dismissal and Notice of Rights on September 23, 2020.

55. This suit was filed within ninety (90) days from the date of the Notice of Rights.

56. Wehmuller filed a tort claim with Canadian County on November 12, 2020.

57. As of the date of this filing, the tort claim has not yet been denied and the period for denial has not yet expired.

58. Wehmuller is a Caucasian female over the age of forty (40).

## II.     STATEMENT OF FACTS

### A.     GENERAL FACTS AS TO ALL PLAINTIFFS AND CLAIMS:

59. As of the April 1, 2010 census Canadian County had a population of 115,541.[1]

60. Canadian County is Oklahoma's fastest growing county with a population exceeding 148,000 people as of July 1, 2019.

61. Each Oklahoma County have a population of 80,000 or more pursuant to the last census has a juvenile bureau and a citizen's advisory board.

62. The juvenile bureau is responsible for providing juvenile justice services to children, youth had family located within the county and is subject to the jurisdiction of the juvenile division of the county district court. 10 O.S. §2-4-101.

63. The Gary E. Miller Children's Justice Center aka the Canadian County Children's Justice Center (CCCJC) is where the Juvenile Bureau for Canadian County is based.

64. Oklahoma statutory law sets forth the hierarchy of the management of the Juvenile Bureau and how the same should be overseen and managed in 10A O.S. § 2-4-102:

   a. The chief administrative officer of the juvenile bureau shall be a director, who shall be subject to the direction and supervision of the judge of the Juvenile Division, subject to the general administrative authority of the Presiding Judge of the Judicial Administrative District within budgetary limitations. There shall be sufficient counselors, clerks, and assistant clerks to properly conduct the work of the bureau. **The director shall be a person over the age of thirty (30) years, of good character, qualified in social work, and familiar with the problems of juvenile delinquency and dependency**. The director shall be appointed by the judge of the Juvenile Division, subject to the general administrative authority of the Presiding Judge of the Judicial Administrative District, from a list of eligible persons established by the citizens' advisory committee at the request of the Presiding Judge of the Judicial Administrative District. Counselors and other persons may

---

[1] https://www.census.gov/quickfacts/fact/table/canadiancountyoklahoma,US/POP010210

5

EXHIBIT 3

be employed by the director with the approval of the judge of the Juvenile Division, subject to the general administrative authority of the Presiding Judge of the Judicial Administrative District. **The director may be removed by the judge of the Juvenile Division, subject to the general administrative authority of the Presiding Judge of the Judicial Administrative District at any time. The counselors and other employees may be removed by the director.**

65. The statute sets out the morality, work, and educational requirements for the director of the Gary E. Miller Center and the chain of command for the hiring, firing, promotion, or discipline of employees.

66. Additionally, a Citizen's Advisory Committee is established to aid in the effective administration of the juvenile bureau. See 10A O.S. § 2-4-109.

67. Judge Bobby Hughey, pursuant to statute in his role as head of the Juvenile Bureau, had the final decision-making authority for the hiring of Daniel Kern.

68. Judge Bobby Hughey pursuant to statute in his role as head of the Juvenile Bureau, had the final decision-making authority for the discipline and termination of Daniel Kern.

69. When Judge Bobby Hughey, in his role as the head of the Juvenile Bureau hired Daniel Kern, he either knew or should have known that there were questions regarding Daniel Kern's fitness for this job based on the requirement of "good moral character" under the statute and Judge Hughey hired him anyway.

70. This is the second time Judge Hughey has allowed an individual of questionable moral character to serve in the roll of the Director of the CCCJC as the previous director was terminated for sexual harassment of employees in 2017.

71. Prior to working for Canadian County Kern was the director of Walnut Grove Correctional Facility in Mississippi.

72. Daniel Kern was named as a defendant in a lawsuit against Walnut Grove for the mistreatment of juveniles.

73. Walnut Grove was a private for-profit juvenile prison that was ultimately closed due to the lawsuit in which Kern was named as a defendant.

74. Both the judge in the lawsuit and the US Department of Justice (DOJ) made substantial findings about the horrific treatment of juveniles at this facility. Such findings included that there was "systemic, egregious and dangerous practices exacerbated by a lack of accountability and controls" in management at the facility.

75. After reviewing the evidence, the Court stated it understood how the DOJ concluded that "the sexual misconduct occurring at [Walnut Grove], including "brazen" staff sexual misconduct and brutal youth on-youth rapes, was "among the worst that we have seen in any facility anywhere in the nation."

6

EXHIBIT 3

76. The judge overseeing the case stated in regard to Walnut Grove that "The misconduct is widespread and frequent, and [Walnut Grove] is deliberately indifferent to the serious and substantial risk of harm to which these youth are subjected. And to add one final insult to these injuries, State officials repeatedly failed to monitor the contracts with GEO and simply rewarded the company by either extending or offering new contracts, or by not revoking the existing contract despite "systemic, egregious, and dangerous practices exacerbated by a lack of accountability and controls."

77. Kern was the Deputy Warden for Walnut Grove and was named in the lawsuit with the horrific allegations that were later proven and resulted in the permanent closure of the facility.

78. While Kern was later dismissed from the lawsuit, the dismissal was not one clearing Kern of allegations, rather it was for purposes of streamlining that litigation.

79. Canadian County and Judge Bob Hughey knew of Kern's employment with Walnut Grove at the time he was hired and knew or should have known of the allegations against Kern prior to employing him.

80. Canadian County and Judge Bob Hughey hired Kern as the Director of the CCCJC anyway.

81. The allegations against Kern were a matter of public record and based on the statutory requirement that the individual serving as the Director of the Gary E Miller Center be of good moral character should have been fully vetted and investigated prior to his employment with Canadian County.

82. On information and belief Judge Hughey and Canadian County knew of the allegations and knowingly and intentionally hid Kern's history upon his hiring.

83. On information and belief, Kern had a history of inappropriate behavior in the workplace that preceded his employment with even Walnut Grove, and he moved from center to center with his inappropriate conduct being overlooked and swept under the rug by multiple employers.

84. Shortly after Kern was hired, he began engaging in a pattern of behavior that was inappropriate for the workplace, not in keeping with the requirements of 10A O.S. § 2-4-102 et seq and created a hostile work environment for those he worked with.

85. During his employment with the center Kern made sexually charged comments about youth at the CCCJC specifically about a 13-year-old female and such comments were overlooked, ignored, and swept under the rug.

86. Kern solicited subordinates to help him convince another subordinate to engage in a dating and/or sexual relationship with him.

87. Kern routinely talked about sexually charged and inappropriate topics that were not relevant or appropriate to the conducting of business of the CCCJC including such things as:

   a. his wife's pubic hair when giving birth to their children and how he named her sasquatch as a result of her failure to shave.

7

EXHIBIT 3

b. The placement of his genitals when he used a toilet and particularly when he was defecating.

c. The abnormally large size of his genitals particularly as compared to Oklahoma men.

d. Describing his history of humor by paging "Vulva Hymen" over the intercom.

e. Discussing his discovery of a used tampon and how it impacted him.

f. Graphic description of his daughter's inability to use a tampon or engage in sexual activity due to inadequacies of her feminine anatomy.

g. Making sexual comments about a 13-year-old female in his charge having a "nice butt" and offering to drive her to see her father in jail when such comments and/or offers of transportation are inappropriate and violate CCCJC rules.

88. Kern routinely targeted female employees as the subject of "jokes" and his offensive humor by such things as:

a. Telling a female employee "Glad your puss is here" when she arrived at a meeting.

b. Referring to Plaintiff Ronda Moss as the "Gestapo;"

c. Referring to employee Monica, who is an immigrant, as a "mail order bride;"

d. Soliciting Plaintiff Erin Barton to help him convince Monica to leave her husband for him.

e. When speaking with one subordinate employee he Referred shoes being worn by another subordinate employees' shoes as "hooker heels."

f. Making fun of female employees looks, glasses, and patterns of speech.

g. Making fun of children in his charge with special needs by calling them such things as "window lickers" "shitheads" and "the ones who wear the helmets."

h. Making fun of children by making gestures with his hands, face, and pattern of speech to imitate a handicapped child in a mocking manner.

i. Publicly discussed a child exposing himself in multiple places in the building to individuals who should not have received such information while saying that the child in question was "swinging his meat around."

j. Asking a group of students if "they were keeping it in their pants today?"

k. Targeting an employee for displaying a nervous tic when speaking.

l. Specifically commenting on and/or asking the age of female job applicants.

EXHIBIT 3

89. All the current and former employees named as Plaintiffs herein made complaints to CCCJC Human Resources, Judge Bobby Hughey, Canadian County Human Resources, and/or the Canadian County Commissioners.

90. On September 24, 2019, Melissa McClain delivered handwritten notes to Judge Bobby Hughey from Ronda Moss, CCCJC Assistant Facility Director and HR Director which reflected complaints about Daniel Kern's conduct made by Ronda Moss, Melissa McClain, Erin Barton, Paul Hardaway, Angel Colley, Robert Fletcher, Donni Duggan, and others at the center.

91. Judge Hughey took no action on these complaints he did request more formal complaints.

92. On September 26, 2019, Melissa McClain delivered Ronda Moss's typed summary of complaints from these individuals and other information the Judge, in his role as the head of the Juvenile Bureau should investigate about Kern's conduct at the CCCJC.

93. Judge Hughey should have followed up with Ronda Moss about the allegations that were made, and he never did so beyond tell Ms. Moss he was in receipt of the complaints and he would speak with County HR about the same.

94. On October 9, 2019, Moss spoke with Commissioner David Anderson about her concerns and he had no information about complaints being made.  Ms. Moss told Anderson she was afraid she would be retaliated against for coming to him.

95. Commissioner Anderson stated that Kern's conduct was vulgar and that he would look into the allegations.  Anderson further stated that the County had a policy against retaliation and thanked her for following county policy about reporting.

96. On information and belief Commissioner Anderson took no further action to investigate the complaints.

97. On October 9, Plaintiff Wehmuller spoke with Commissioner Marc Hader about Kern's behavior at the center and that it needed to be investigated. Hader made the comment that this was the second time that he had heard about Kern's inappropriate conduct that day. Hader said he would look into the allegations and he wasn't real concerned with the way Kern was handling things because "people didn't always like change."

98. Plaintiff Wehmuller felt that Hader's comments indicated that he did not take the allegations seriously.

99. On information and belief Commissioner Hader took no further action to investigate the complaints.

100.    Prior to Moss's termination neither the County Commissioners, Judge Bobby Hughey, nor the County HR Representative took any action to speak with Moss, McClain, or others about the conduct of Kern.

101.    Moss and McClain both filed intakes with the EEOC on October 15, 2019.

EXHIBIT 3

102.   Moss was terminated on October 17, 2019.

103.   McClain was demoted on October 17, 2019.

104.   On October 28, 2019, News 9 ran a story about the inappropriate behavior of Daniel Kern at the CCCJC.[2]

105.   On November 5, 2019, an evidence preservation letter was served on the County on behalf of McClain and Moss.

106.   On November 5, 2019 News 9 made a report wherein the Canadian County Officials responded to the allegations of Misconduct. A Facebook post was made claiming that they were "not notified" of the allegations and an investigation into Kern had been "delayed by the withholding of information."[3]

107.   The Facebook post by a representative for the County and/or the CCCJC was inaccurate in that Judge Hughey and 2 out of 3 commissioners were specifically advised of Kern's conduct prior to the news story of October 28, 2019 and is evidence of the intent of the County to cover up Kern's conduct.

108.   On November 6, 2019, Plaintiff Ronda Moss gave an interview with News 9 detailing what happened and the County's failure to act.[4]

109.   On November 12, 2019, evidence preservation letter was served on the County on behalf of Barton, Fletcher, and Wehmuller.

110.   On November 13, 2019, at approximately 9 am Daniel Kern entered the office of Erin Barton and started screaming at her about suing him. This incident was caught on video.

111.   Ms. Barton immediately requested that the video of Mr. Kern harassing her be saved as evidence.

112.   While Ms. Barton was in the process of reporting Kern's conduct to management, he confronted her again by stating he "didn't confront her" thereby making admissions against interest about the nature of his conduct.

113.   On November 18, 2019, Daniel Kern was placed on administrative leave without pay.

114.   On about November 21, 2019, Daniel Kern was fired.

115.   On information and belief, Canadian County only took action against Kern because he was caught on video harassing Barton within 24 hours of Barton making a complaint. Prior to

---

[2] https://www.news9.com/story/5e346e68527dcf49dad6c11b/harassment-inappropriate-behavior-alleged-at-el-reno-detention-center

[3] https://www.newson6.com/story/5e346de2527dcf49dad6dd76/canadian-co-officials-respond-to-allegations-of-misconduct-at-juvenile-center

[4] 1/2-women-claim-they-were-fired-for-reporting-sexual-harassment-against-canadian-co-juvenile-center-directormen-claim-they-were-fired-for-reporting-sexual-harassment-against-canadian-co-juvenile-center-director

EXHIBIT 3

being caught on video Canadian County had taken no action to investigate the complaints made by Plaintiffs and others.

## B.   FACTS SPECIFIC AS TO EACH PLAINTIFF:

### a.   Ronda Moss

116.   Moss was hired as a Human Resources Director for the Canadian County Children's Justice Center in 2015 and promoted to Assistant Facility Director in 2018 while serving concurrently in the role of Human Resources Director.

117.   In November 2017 Moss interviewed for the position of Facility Director which would be coming vacant upon the retirement of the existing Facility Director.

118.   In April 2018 Moss was given the position of Assistant Facility Director despite there not being a posting for an opening or a position for an Assistant Facility Director.

119.   Rather than hiring a Facility Director, which was the posted position, Hughey elected instead to hire two Assistant Facility Directors.

120.   Hughey informed Moss that should she elect to accept the Assistant Facility Director she would not be relieved of her Human Resources Director job duties.

121.   Cedric Mills was hired, from outside the facility, as the other Assistant Facility Director.

122.   Hughey instructed Moss to train Mills and teach him everything she knew about the position.

123.   Later, during a Citizen's Advisory Meeting, Hughey announced that Mills and Moss would be competing for the same promoted position, that of the Facility Director.

124.   Hughey subsequently met with Moss and stated he was concerned about promoted her due to her filing an EEOC complaint against a previous employer.

125.   In November 2018 Hughey instructed Moss to post the open Facility Director's position again and she inquired if she would be required to interview again.

126.   Hughey informed Moss that she would be required to re-interview due to her previously filed EEOC complaint against a former employer.

127.   In December 2018, Mills entered Moss's office uninvited and began to harass her physically and verbally.  Moss had to yell to alert her co-workers because his conduct was making her so uncomfortable.

128.   Thereafter, Moss delivered a complaint to Hughey about the incident and requested a meeting with him.  Hughey took no action to reprimand Mills or to protect Moss.

129.   In late February/early March 2019, Hughey announced that he had chosen Daniel Kern for the Facility Director position.

EXHIBIT 3

130.    When Moss inquired as to why she had not been chosen for the position, Hughey again informed her that it was because she had previously filed an EEOC complaint against a former employer.

131.    Within weeks of Mr. Kern beginning to work at the Children's Justice Center he began making sexual remarks, offensive gestures, telling sexual jokes and talking very inappropriately to females in the facility, including Moss and McClain.

132.    In September 2019, other employees began reported to either Moss or McClain, as HR staff, and made complaints about Kern's disturbing and escalating behavior.

133.    Following the County's policy manual, on September 24, 2019 and again on September 26, 2019, McClain submitted documentation about Kern's inappropriate language and vulgar behavior on her and Moss's behalf as well as on behalf of other employees.

134.    On October 3, 2019, the Dean of Students of the alternative school at the Justice Center, Paul Hardaway, reported to Moss and McClain that the day prior Kern had come to the school and spoken with a 13-year-old female student. Hardaway observed Kern tell the student that if she improved her behavior, he would take her to see her father, whom she had never seen, and who was incarcerated.

135.    When this student left Hardaway's office, Kern tapped Hardaway on the shoulder and stated, "cute kid," and "she has a cute butt."

136.    Moss expressed her concerns about Kern's behavior to Hughey, but no action was taken, and Kern continued to have access to youth in the facility.

137.    On October 9, 2019, Moss called County Commissioner David Anderson and spoke with him about the Kern complaints.

138.    Commissioner Anderson advised Moss that he was not aware of the complaints. Commissioner Anderson took no action on the complaints.

139.    On October 17, 2019, Ms. Moss was to meet with County HR Director, NaCole Majors ("Majors"), in Major's office. During the meeting Majors notified Moss that she was being terminated.

140.    No reason was given to Moss for her termination during the meeting with Majors.

141.    Immediately after Moss was terminated, Kern called an impromptu meeting at the Justice Center for all of the employees who were in the building.

142.    Kern announced to the Justice Center Staff that Moss had been fired and the complaints about him "were just gossip and rumors."

143.    Kern also instructed employees not to have contact with Moss and attempted to ban her from the property.

EXHIBIT 3

144.   The following day, October 18, 2019, Kern had a discussion with one of the employees who had made one of the complaints against him, Barton.

145.   Kern advised Barton, that "the gossip and rumors are gone" indicating he was referring to Moss's being terminated.

146.   Kern stated to Barton that he "would be just fine" apparently insinuating that no adverse action would be taken against him as a result of the complaints.

147.   Upon information and belief, Hughey shared the complaints with Kern which motivated Kern to retaliate against Moss.

**b. Melissa McClain**

148.   McClain was hired as a detention officer for the Canadian County Children's Justice Center in 2004 and then moved to the administrative assistant for detention position.

149.   In May 2018, McClain transferred to the Human Resources Department as a General Office Assistant under the supervision of Moss.

150.   McClain began working with Kern while still being supervised by and working closely with Moss.

151.   In the Summer of 2019, Kern recommended McClain be given the title of HR Generalist since she was responsible for many job duties.  McClain also received a small raise.

152.   During that same period, Kern also created a position for a younger female and awarded her a $10,000.00 annual raise.

153.   This "new" position was not posted, and McClain was not given an opportunity to interview for it.

154.   In the fall of 2019, Kern again created another "new" position for another younger employee with a higher salary than McClain's for which she was not given an opportunity to interview because it was not posted.

155.   Throughout his employment with the CCCJC, Kern made sexual and offensive remarks to and about the employees at the center.  He told sexual jokes and talked very inappropriately to females in the facility, including Moss and McClain.

156.   In September 2019, multiple employees began seeking out Moss and/or McClain, as HR staff, to make complaints about the offensive behavior and hostile work environment being created by kern.

157.   McClain also made complaints about Kern's escalating inappropriate behavior.

158.   In accordance with the County's policy manual, on September 24, 2019 and again on September 26, 2019, McClain submitted a complaint about Mr. Kern's inappropriate language

13

EXHIBIT 3

and vulgar behavior.

159.   These complaints were submitted by McClain in her personal capacity and in her capacity as the HR Generalist on behalf of other employees including but not limited to her supervisor Moss.

160.   On October 3, 2019, the Dean of Students of the alternative school at the Justice Center, Paul Hardaway, told McClain and Moss that the day prior, Kern told a 13-year-old female student that if she improved her behavior, he would take her to see her father, whom she had never seen, and who is incarcerated.

161.   When this student left Hardaway's office, Kern tapped Hardaway on the shoulder and stated, "cute kid," and "she has a cute butt."

162.   On occasion, McClain and co-worker Fletcher would utilize lunch breaks for bible study either in a vacant office or off-campus. Their lunch hour was unpaid.

163.   Kern and Majors informed McClain that her bible study was not permitted.

164.   Soon after Moss's termination Kern approached McClain and told her that she could keep her job if she 'didn't do what she had done before." (Turning in complaints.)

165.   The following day, October 18, 2019, Kern stated to McClain that she had "violated confidentiality" so she would no longer be allowed to have access to some employees' information even though it is HR's job to keep employee documentation in personnel files.

166.   On or about October 15, 2019 McClain made contact with EEOC regarding filing a charge against Canadian County, Judge Hughey, Daniel Kern and others.

167.   Majors was made aware of McClain's contact with the EEOC on October 17, 2019.

168.   Since that time, McClain has had numerous HR job duties taken away from her and was told by Kern to stay in her office until they figure out what to do with her.

### c.   Erin Barton

169.   Barton has been employed by the Justice Center since 2013, initially serving as a Supervised Visitation Monitor, and presently as a Supervised Visitation Supervisor.

170.   Soon after Kern began working at the Justice Center Barton was exposed to Kern's inappropriate and offensive conduct.

171.   On several occasions, Kern visited Barton's office unannounced to discuss his patently vulgar and inappropriate thoughts.

172.   During one of these visits Kern informed Barton that he was "excited because he gets a big boy toilet installed in his house" and further stated "I don't know what's wrong with Oklahoma

14

EXHIBIT 3

boys, but I guess they don't put their balls in the toilet to poop...does your husband put his balls in the toilet to poop?"

173.    During a Summer 2019 incident, Kern visited Barton's office and initiated another uninvited conversation asking her whether one of her employees "looks hot."

174.    Barton was aware that Kern was referring to an employee of Columbian nationality.

175.    Kern then asked Barton to disclose further details regarding this employee's Columbian nationality and information about this employee's husband.

176.    Following these comments, Kern next obscenely speculated that the employee was most likely "a-mail-order-bride."

177.    Last, Kern informed Barton that he wanted Barton to "help get this employee away from her husband."

178.    In September of 2019, Barton drafted a formal complaint against Kern concerning his inappropriate comments, discriminatory conduct, and creation of a hostile work environment which was delivered to Human Resource Generalist McClain.

179.    In October of 2019, Kern and Barton attended a meeting in which Kern made it clear that he knew she had filed a formal complaint against him.

180.    Kern then commented to Barton, about her formal complaint, that "he [ Kern] would be just fine," as it concerned his employment security.

181.    In November of 2019, Barton retained legal counsel and on November 12, 2019, a Letter of Preservation and Open Records Act Request were hand-delivered to Canadian County, placing the County on notice of Barton's claims.

182.    The very next day, on November 13, 2019, Kern further harassed Barton by abruptly entering her office, stating that he had "heard I [Ms. Barton] was suing him."

183.    This disruptive act caused Barton to cry while stating to Kern that: "I only want to do my job."

184.    Barton notified her legal counsel of Kern's conduct and counsel reported the same which resulted in Kern's termination.

185.    Although Kern was fired on or about November 21, 2019, Barton has continued to be subjected to a hostile work environment, retaliation, and differential treatment than her non-reporting co-workers.

### d. Robert Fletcher

186.    Fletcher began his employment with the Justice Center in 2000 after being hired as a Detention Officer, and most recently, as a Maintenance Technician.

EXHIBIT 3

187.   In March of 2019 Kern commenced creating a discriminatory and hostile work environment for the employees of the Justice Center.

188.   In 2018, Hughey assigned Fletcher to supervise a massive construction project that was undertaken, initiated, and is presently still taking place at the Justice Center facility.

189.   During this project, as Maintenance Technician, Fletcher's presence was often required and necessary to oversee and escort construction workers on the premises for safety and confidentiality purposes.

190.   Fletcher's familiarity and technical knowledge of the facility also made his presence at the work sight essential.

191.   Yet, in 2019 Kern removed Fletcher from the unfinished project with no explanation.

192.   Thereafter, Kern informed Fletcher that he was no longer permitted to reside with his roommate and owner of their residence, Gary Medley ("Medley").

193.   Medley was the acting Construction Superintendent for a private construction company contracted to perform work at the facility.

194.   Kern forced Fletcher to vacate himself from Medley's home and to or risk losing his job.

195.   Kern's ultimatum regarding Fletcher's preferred residency was administered to him with no explicit or implied purpose.

196.   During the summer of 2019, Kern proposed that instead of a raise, Fletcher would be entitled to drive the facility's work truck to and from his home when commuting to work and because as the Maintenance Technician Fletcher was required to be on-call "in cases of emergency."

197.   Fletcher accepted this offer but shortly after Kern informed Fletcher that he would not be permitted to drive the facility truck home nor would he be receiving the raise.

198.   On occasion, Fletcher and co-worker McClain would utilize lunch breaks for bible study either in a vacant office or off-campus. Their lunch hour was unpaid.

199.   After complaining about Kern, McClain and Fletcher were targeted.  McClain was prevented from having lunch with or visiting with her co-workers and in particular Fletcher.

200.   Kern and Majors informed Fletcher and McClain that their bible study was not permitted.

201.   Despite Kern's termination in November 2019, Fletcher continued to endure a hostile work environment including discrimination, intimidation, and interference and retaliation.

202.   Fletcher filed an intake and charge of discrimination in March 2020.

203.   Fletcher's employment was terminated on October 10, 2020, allegedly after Fletcher made a comment about the unfair and discriminatory treatment of another employee.

16

EXHIBIT 3

204.   The CCCJC said Fletcher's statement pointing out the discriminatory treatment was insubordinate.

205.   Fletcher contends that the stated reason was pretextual as a means to terminate Fletcher's employment as he continued to speak out about the poor treatment of employees by the County and the Judge and in particular the retaliation against Melissa McClain.

206.   Fletcher further contends that the reason is pretextual as she has served as a witness on behalf of four (4) other Plaintiffs against the Defendants in addition to his own complaints.

207.   Fletcher is filing a second charge of discrimination related to his termination.

### e.   Donna Wehmuller

208.   Since 2013 Wehmuller has been employed as an Administrative Assistant for the Children's Justice Center's Alternative School, an office of the CCCJC.

209.   Wehmuller remains presently employed with the CCCJC and continues to experience a hostile work environment, including discrimination and retaliation.

210.   In March 2019, Wehmuller observed Kern refer to the CCEC students as "shit heads" during on office meeting.

211.   During the summer of 2019, Kern created a "new" position for hire with the title, "Quality Assurance Coordinator."

212.   However, no hiring process was administered for this position, and no postings regarding its opening for applications were published.

213.   Consequently, Wehmuller, among other CCCJC employees, was not permitted to interview for this position or even provided an opportunity to apply for it although Wehmuller would have been qualified and could have been a potential hiring consideration

214.   Instead, Kern internally promoted a young female employee as the "Quality Assurance Coordinator," awarding her a $10,000.00 annual raise.

215.   In the fall of 2019, Kern created a second "new" position, this time titled "Executive Assistant" while again foregoing any administered hiring process or postings.

216.   Instead, Kern once more internally hired another younger female employee and likewise provided her with a raise denying Wehmuller an opportunity to interview for this "new" position for which she was qualified.

217.   Throughout the summer and into the fall of 2019, Wehmuller observed Kern engage in conversation, rhetorical commenting, and asides, all of which were inappropriate and offensive in numerous facets, including speaking offensively about matters concerning CCCJC enrolled children and students.

EXHIBIT 3

218.    Wehmuller experienced Kern talking to and about her co-workers in a vulgar manner and observed Kern often sexually discriminate against female CCCJC employees when speaking to or about them.

219.    Wehmuller suffered Kern intimately describing his male anatomy.

220.    During the period spanning from September 24, 2019 to October 7, 2019, numerous CCCJC employees attempted to bring an end to the hostile work environment Mr. Kern had created for the CCCJC employees.

221.    To halt Mr. Kern's offensive conduct, Wehmuller joined Moss and McClain in drafting complaints to be submitted to Hughey.

222.    These three female CCCJC employees' complaints were delivered personally by Moss and McClain to Hughey.

223.    Five other CCCJC employees also joined the women in submitting formal complaints.

224.    Ms. Wehmuller spoke with Canadian County Commissioner Marc Hader regarding Kern's behavior and acts of promulgating a hostile work environment at CCCJC.

225.    Moss spoke to Canadian County Commissioner Dave Anderson and Canadian County Human Resources Director, Ms. Nicole Rogers about Kern's behavior and the hostile work environment at CCCJC.

226.    No action was undertaken to with respect to Kern's offensive and unlawful conduct.

227.    Wehmuller continues to suffer harassment and retaliation since coming forward about Kern.

III.    **CAUSES OF ACTION – AS TO DEFENDANT CANADIAN COUNTY**

**FIRST CAUSE OF ACTION- AGE DISCRIMINATION ON BEHALF OF ALL PLAINTIFFS**

228.    Plaintiffs adopt and incorporate the previous paragraphs as if fully set forth herein.

229.    Plaintiffs Moss, McClain, Fletcher, Wehmuller and Barton are employees within the meaning of the ADEA and belong to the class of employees protected under the statute, namely, employees over the age of forty (40).

230.    Defendant Canadian County is an employer within the meaning of the ADEA; is engaged in an industry affecting commerce; and has twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or proceeding calendar year.

231.    Defendant Canadian County discriminated against each Plaintiff because of his or her age in violation of the ADEA by failing to correct the actions of employees making age discriminatory comments; by giving positions, perks, promotions, and raises to younger

EXHIBIT 3

employees; and by treating younger employees in similarly situated positions as Plaintiffs' more favorably.

232.    As a result of the conduct by Defendant Canadian County, Plaintiffs were forced to endure a hostile work environment, were overlooked for overtime, positions, and promotions for which each was otherwise qualified for and were eventually terminated.

233.    As a result of the terminations, Plaintiffs have lost wages and benefits, suffered emotional distress and mental anguish, and have sustained damage to their reputations and careers.

234.    Plaintiffs Moss, McClain, Fletcher, Wehmuller and Barton have each been injured in an amount in excess of $75,000.00 and are entitled to judgment against the Defendants for their wrongful conduct.

### SECOND CAUSE OF ACTION- SEX/GENDER DISCRIMINATION ON BEHALF OF MOSS, MCCLAIN, WEHMULLER AND BARTON

235.    Plaintiffs adopt and incorporate the previous paragraphs as if fully set forth herein.

236.    Plaintiffs Moss, McClain, Fletcher, Wehmuller and Barton are employees within the meaning of the Title VII and belong to the class of employees protected under the statute, namely, females.

237.    Defendant Canadian County is an employer within the meaning of the Title VII; is engaged in an industry affecting commerce; and has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or proceeding calendar year.

238.    Defendant Canadian County discriminated against each Plaintiff because of their gender/sex in violation of the Title VII by failing to correct the actions of Daniel Kern who engaged in discriminatory conduct towards them based on their gender/sex.

239.    Daniel Kern, plaintiffs' supervisor was employed by defendant as the Director of the CCCJC.

240.    Daniel Kern, plaintiffs' supervisor was empowered by defendant to take tangible employment actions against plaintiffs.

241.    Daniel Kern was appointed by Judge Bobby Hughey, subject to the general administrative authority of the Presiding Judge of the Judicial Administrative District. Per Oklahoma law, counselors, and other persons at the CCCJC may be employed by Daniel Kern with the approval of Judge Bobby Hughey, subject to the general administrative authority of the Presiding Judge of the Judicial Administrative District. The counselors and other employees of the CCCJC may be removed by the Daniel Kern.

242.    The Plaintiffs were subject to the discriminatory and hostile treatment by Daniel Kern by targeting them on the basis of their sex, by discussing matters about their sexuality and his sexuality that made them uncomfortable and otherwise treating them differently on the basis of their sex/gender

EXHIBIT 3

243.    As a result of the conduct by Defendant Canadian County, Plaintiffs were forced to endure a hostile work environment, were overlooked for overtime, positions, and promotions for which each was otherwise qualified for and were eventually terminated.

244.    As a result of the terminations, Plaintiffs have lost wages and benefits, suffered emotional distress and mental anguish, and have sustained damage to their reputations and careers.

245.    Plaintiffs Moss, McClain, Wehmuller and Barton have each been injured in an amount in excess of $75,000.00 and are entitled to judgment against the Defendants for their wrongful conduct.

## THIRD CAUSE OF ACTION- HOSTILE WORK ENVIRONMENT ON BEHALF OF MOSS, MCCLAIN, WEHMULLER, FLETCHER AND BARTON

246.    Plaintiffs adopt and incorporate the previous paragraphs as if fully set forth herein.

247.    Plaintiffs Moss, McClain, Wehmuller and Barton are female employees within the meaning of the Title VII and belong to the class of employees protected under the statute, namely, women.

248.    Plaintiff Fletcher is a male employee within the meaning of the Title VII and belong to the class of employees protected under the statute, namely, men.

249.    Defendant Canadian County is an employer within the meaning of Title VII; is engaged in an industry affecting commerce; and has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or proceeding calendar year.

250.    Daniel Kern, plaintiffs' supervisor was employed by defendant as the Director of the CCCJC.

251.    Daniel Kern, plaintiffs' supervisor was empowered by defendant to take tangible employment actions against plaintiffs.

252.    Daniel Kern was appointed by Judge Bobby Hughey, subject to the general administrative authority of the Presiding Judge of the Judicial Administrative District.  Per Oklahoma law, counselors, and other persons at the CCCJC may be employed by Daniel Kern with the approval of Judge Bobby Hughey, subject to the general administrative authority of the Presiding Judge of the Judicial Administrative District. The counselors and other employees of the CCCJC may be removed by the Daniel Kern.

253.    Defendant Canadian County discriminated against each Plaintiff because of their gender/sex, age, and religion in violation of the Title VII by failing to correct the actions of Daniel Kern who engaged in discriminatory conduct towards them based on their gender/sex.

254.    Daniel Kern created a hostile work environment through his discriminatory words and actions towards plaintiff because of plaintiff's sex, religion, and age. This conduct was so severe that it altered the terms and conditions of plaintiff's employment and interfered with

EXHIBIT 3

Plaintiffs' work performance and created an intimidating, hostile, and offensive work environment.

255.    Kern engaged in sexually explicit discussions with men and women on staff at the CCCJC making them uncomfortable, he made comments about age, dress, hygiene, private personal matters, sexual comments about children and made fun of children in the care, custody and keeping of the CCCJC.

256.    Defendant is directly liable because it was negligent in discovering and remedying the discriminatory conduct.

257.    The Plaintiffs reported the conduct of Kern on multiple occasions and the county failed to take action.

258.    The conduct of Kern was severe and pervasive and happened openly and notoriously and Judge Hughey ignored the conduct.

259.    When the conduct was brought to Judge Hughey and the County Commissioners they failed to take any action.

260.    The County only took action when the conduct was reported to the media.

261.    Further, Kern was the second individual to serve in the position of Director of the CCCJC to engage in a pattern of sexual harassment. After the previous director was terminated as a result of such conduct Judge Hughey and the County failed to implement proper training, policies and procedures to prohibit such behavior.

262.    Further, the County and Judge Hughey failed to do a proper background check into previous claims against Kern and/or hired him knowing he had been previously accused of such outrageous and inappropriate conduct towards children and employees.

263.    Defendant Canadian County is strictly liable for Daniel Kern's discriminatory conduct because Judge Hughey, Daniel Kern, and NaCole Majors took a tangible employment action against plaintiffs that significantly changed Plaintiffs employment status.

264.    Since coming forward and reporting what happened with Daniel Kern, participating in the EEOC process, and retaining counsel the following adverse employment actions have occurred:

a.  Plaintiff Ronda Moss was fired.

b.  Plaintiff Robert Fletcher has been fired.  Fletcher has been told he cannot have personal friendships with current or former employees, he has been told she cannot engage in bible study with her co-workers during his breaks and has been subject to adverse employment reviews.  Fletcher was forced to move, or risk losing his employment and was denied the use of a work truck and a raise he was promised.

EXHIBIT 3

c. Plaintiff Melissa McClain has been demoted and transferred to another position. She has lost job duties, she has been targeted for drug testing, she has been told she cannot have personal friendships with current or former employees, she has been confined to her office, she has been told she cannot engage in bible study with her co-workers during her breaks and has been subject to adverse employment reviews. She has had job duties taken away and harassed in the course of trying to perform her job all in an effort to force her to quit.

d. Plaintiff Erin Barton is not provided with the tools and employees necessary to effectively do her job, she has been treated different than other employees in regard to the COVID 19 pandemic. She was verbally assaulted by Daniel Kern and was in fear of physical assault. Barton does not receive proper staffing and support to do her job. She has been sanctioned for speaking out about her job in social media.

e. Donna Wehmuller has been targeted, harassed, and subjected to a hostile work environment with improper punishment and reviews.

265. Defendant Canadian County is vicariously liable for the discriminatory conduct of Daniel Kern, Judge Bobby Hughey and NaCole Majors. The discriminatory conduct of Kern, Hughey and Majors imposes liability even if no adverse employment action has been taken but every Plaintiff has experienced some form of adverse employment action. Defendant did not exercise reasonable care to prevent and promptly correct the discriminatory conduct, even though plaintiff took advantage of defendant's measures designed to prevent and correct discriminatory conduct.

266. As a result of the conduct by Defendant Canadian County, Plaintiffs were forced to endure a hostile work environment, were overlooked for overtime, positions, and promotions for which each was otherwise qualified for and were eventually terminated.

267. As a result of the terminations, Plaintiffs have lost wages and benefits, suffered emotional distress and mental anguish, and have sustained damage to their reputations and careers.

268. Plaintiffs Moss, McClain, Fletcher, Wehmuller and Barton have each been injured in an amount in excess of $75,000.00 and are entitled to judgment against the Defendants for their wrongful conduct.

**269.    FOURTH CAUSE OF ACTION- RELIGIOUS DISCRIMINATION ON BEHALF OF MCCLAIN AND FLETCHER**

270. Plaintiffs adopt and incorporate the previous paragraphs as if fully set forth herein.

271. Plaintiffs McClain and Fletcher are employees within the meaning of the Title VII and belong to the class of employees protected under the statute, namely Christians.

272. Defendant Canadian County is an employer within the meaning of Title VII; is engaged in an industry affecting commerce; and has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or proceeding calendar year.

EXHIBIT 3

273.   Daniel Kern, plaintiffs' supervisor was employed by defendant as the Director of the CCCJC.

274.   Daniel Kern, plaintiffs' supervisor was empowered by defendant to take tangible employment actions against plaintiffs.

275.   NaCole Majors was employed by defendant as the Human Resources Director by the County.

276.   NaCole Majors was empowered by defendant to take tangible employment actions against plaintiffs.

277.   Kern and Majors took action against Fletcher and McClain by telling them that they could not meet during their lunch hour or on their breaks to engage in bible study.

278.   Kern and Majors both told Plaintiffs that it was inappropriate for them to meet on or off county property to engage in religious study.

279.   Kern and Majors both threated Plaintiffs with adverse employment action if they did comply with their directions.

280.   Plaintiff Robert Fletcher has been fired.  Fletcher has been told he cannot have personal friendships with current or former employees, he has been told she cannot engage in bible study with her co-workers during his breaks and has been subject to adverse employment reviews.  Fletcher was forced to move, or risk losing his employment and was denied the use of a work truck and a raise he was promised.

281.   Plaintiff Melissa McClain has been demoted and transferred to another position. She has lost job duties, she has been targeted for drug testing, she has been told she cannot have personal friendships with current or former employees, she has been confined to her office, she has been told she cannot engage in bible study with her co-workers during her breaks and has been subject to adverse employment reviews.  She has had job duties taken away and harassed in the course of trying to perform her job all in an effort to force her to quit.

282.   As a result of the conduct by Defendant Canadian County, Plaintiffs were forced to endure a hostile work environment, were overlooked for overtime, positions, and promotions for which each was otherwise qualified for and were eventually terminated.

283.   As a result of the terminations, Plaintiffs have lost wages and benefits, suffered emotional distress and mental anguish, and have sustained damage to their reputations and careers.

284.   Plaintiffs Moss, McClain, Fletcher, Wehmuller and Barton have each been injured in an amount in excess of $75,000.00 and are entitled to judgment against the Defendants for their wrongful conduct.

### FIFTH CAUSE OF ACTION – RETALIATION ON BEHALF OF ALL PLAINTIFFS AGAINST CANADIAN COUNTY

EXHIBIT 3

285.    Plaintiffs adopt and incorporate the previous paragraphs as if fully set forth herein.

286.    Plaintiffs Moss, McClain, Barton and Wehmuller were retaliated against for asserting their rights under the Equal Employment Opportunity Commission (EEOC) and for making formal complaints about the discrimination and hostile work environment to which each was being subjected.

287.    Plaintiffs Moss, McClain, Barton, Fletcher and Wehmuller openly complained about the hostile work environment to human resources, Defendant Hughey, Majors and Canadian County Commissioners.

288.    Plaintiff Moss was retaliated against by Defendants for filing an EEOC charge against her former employer.

289.    Defendants were aware of Moss's charge against a former employer and Judge Hughey cited the same as the rationale for failing to award her the Facility Director position for which she applied; for awarding her the lower position of Assistant Facility Director; and for making her interview twice for the Facility Director position when no other candidate had to do so.

290.    Moss was retaliated against for filing a complaint against Kern on her on behalf as well as for doing her job in bringing forth complaints of others.

291.    Moss filed a complaint with the EEOC on October 15, 2019.

292.    Moss was terminated on October 17, 2019.

293.    McClain filed a complaint with the EEOC on October 15, 2019.

294.    Majors became aware of the complaint on October 17, 2019.

295.    Immediately thereafter, McClain was instructed by Kern to stay in her office during work hours until they could "decide what to do" with her.

296.    Since that time McClain's job duties have been reduced and/or given away to other employees and she has been passed up for promotions for which she is qualified.

297.    In September 2019 Barton filed a formal complaint against Kern relative to his outrageous conduct at the Justice Center.

298.    Immediately thereafter Barton was called into a meeting with Kern in which he was openly derogatory and hostile. No action was taken to deter this behavior or to protect Barton.

299.    Shortly thereafter, Kern was permitted to enter into Barton's office alone at which time he confronted and verbally harassed her to such an extent that she broke down in tears. No action was taken to prevent this event or to protect Barton.

300.    In November 2019, Canadian County received notice of Bussett's representation of Fletcher, Barton and Wehmuller on the same matters as Moss and McClain.

24

EXHIBIT 3

301. Since that time Barton, Fletcher and Wehmuller have continued to suffer retaliation, hostile work environment and a change in their employment.

302. Fletcher has been terminated.

303. Wehmuller believes the County is trying to create a pretext for termination.

304. Moss, McClain, Fletcher, Wehmuller, and Barton have all been targeted for acting as witnesses on behalf of others regarding the conduct of Kern, Hughey and Majors and for filing their own complaints.

305. As a result of the conduct by Defendant Canadian County, Plaintiffs Moss, McClain, Barton, Fletcher and Wehmuller were forced to endure a hostile work environment, were overlooked for overtime, positions, and promotions for which each was otherwise qualified for and were eventually terminated.

306. As a result of the terminations, Plaintiffs Moss, McClain, Barton and Wehmuller have lost wages and benefits, suffered emotional distress and mental anguish, and have sustained damage to their reputations and careers.

307. Plaintiffs, and each of them, have been injured in an amount in excess of $75,000.00 and are entitled to judgment against the Defendants for their wrongful conduct.

**SIXTH CAUSE OF ACTION – OKLAHOMA STATE ANTI-DISCRIMINATION ACT ON BEHALF OF ALL PLAINTIFFS AGAINST CANADIAN COUNTY**

308. Plaintiffs adopt and incorporate the previous paragraphs as if fully set forth herein.

309. The conduct described in the previous paragraphs violates the Oklahoma Anti-Discrimination Act which prohibits an employer from discriminating against or retaliating against an employee on the basis of race, color, national origin, sex, religion, creed, age, disability, or genetic information, and related retaliation claims.

310. The incidents described above that violate the ADEA, and Title VII also violate the Oklahoma Anti-Discrimination Act ("OADA").

311. The elements required to prove age and disability discrimination under the OADA are substantially the same as they are under the ADEA, and Title VII.

312. Plaintiffs have sufficiently plead violations of the ADEA, and Title VII sufficient to put Defendants on notice in the Causes of Action set forth herein.

EXHIBIT 3

313.    As a result of the conduct by Defendant Canadian County, Plaintiffs were forced to endure a hostile work environment, were overlooked for overtime, positions, and promotions for which each was otherwise qualified for and were eventually terminated.

314.    As a result of the terminations, Plaintiffs have lost wages and benefits, suffered emotional distress and mental anguish, and have sustained damage to their reputations and careers.

315.    Plaintiffs have been injured in an amount in excess of $75,000.00 and are entitled to judgment against the Defendants for their wrongful conduct.

### DAMAGES

316.    As a direct and proximate result of defendant's conduct, plaintiff suffered the following injuries and damages.

317.    Plaintiff McClain was denied a promotion to fill Moss's position as the CCCJC HR Director resulting in lost pay and benefits.

318.    Plaintiff McClain was demoted from her position as an HR Generalist and then forced to transfer to another position to escape the hostile work environment.

319.    Plaintiffs Moss and Fletcher were discharged from employment with defendant Canadian County. Although plaintiff has diligently sought other employment, they have been unable to find a job at comparable pay. In addition, plaintiff has incurred expenses in seeking other employment and has had to pay for medical treatment that otherwise would have been covered by the health benefits plan offered by defendant.

320.    Plaintiffs Moss and Fletcher have suffered loss of their pension or retirement benefits.

321.    Plaintiff seeks compensation for all lost wages and benefits, including loss of Social Security benefits. Reinstatement of plaintiff in their previous position is impractical and unworkable. Therefore, plaintiff seeks an award of front pay and retirement benefits to compensate them.

322.    Plaintiffs have suffered mental anguish and emotional distress that is common and routine from suffering such humiliation and degradation at the hands of Canadian county.

323.    Plaintiffs are entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. § 2000e-5(k).

**WHEREFORE**, Plaintiffs demand judgment in his favor and against Defendants in an amount in excess of $75,000.00 for their wrongful, improper, and illegal conduct. Plaintiffs request that each of them be awarded lost wages, damages for lost benefits, damage to reputation, damages for emotional distress and mental suffering, and punitive damages. Plaintiffs further request that the Court award each of them the costs and attorney's fees associated with this suit, and any and all other relief that the Court deems just and equitable.

26

EXHIBIT 3

Respectfully Submitted,

Rachel Bussett, OBA#19769
Kindra N. Avila, OBA #22547
Bussett Legal Group, PLLC
2201 N. Classen Blvd
Oklahoma City, OK 73106
Telephone: (405) 605-8073
FAX:   (405) 212-9112
Email: Rachel@BussettLegal.com
           Kindra@BussettLegal.com
*Counsel for the Plaintiff*

**JURY TRIAL DEMANDED**
**ATTORNEY'S LIEN CLAIMED**

EXHIBIT 3