## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)  RONDA MOSS; at al. | ) | |
|         Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 22-CV-00127-SLP |
| | ) | |
| (1)  CANADIAN COUNTY EX REL THE | ) | |
|       BOARD OF COUNTY COMMISSIONERS, et al | ) | JURY TRIAL DEMANDED |

_____

## DEFENDANT BOARD'S MOTION TO DISMISS PLAINTIFFS' SECOND
## AMENDED COMPLAINT AND BRIEF IN SUPPORT
_____

Respectfully submitted,

 s/ Jordan L. Miller
Jordan L. Miller, OBA No. 30892
COLLINS, ZORN & WAGNER, PLLC
429 N.E. 50th Street, Second Floor
Oklahoma City, OK  73105
Telephone: (405) 524-2070
Fax: (405) 524-2078
Email: jlm@czwlaw.com

***Attorney for Defendants***
***Canadian County, Nacole Majors,***
***Melanie Johnson and Cedric Mills***

March 7, 2022

## TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITY .......................................................................... ii – vi

LIST OF EXHIBITS ................................................................................... viii

BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ........................... 1

STANDARD OF REVIEW ............................................................................. 2

PROPOSITION I            PLAINTIFFS FAILED TO COMPLY WITH RULE 8
                         OF THE FEDERAL RULES OF CIVIL
                         PROCEDURE…………………………………………..3

PROPOSITION II           PLAINTIFFS HAVE NO VALID FEDERAL OR
                         STATE LAW AGE DISCRIMINATION
                         CLAIMS …………………………………………..4

PROPOSITION III          PLAINTIFFS HAVE NO VALID FEDERAL OR
                         STATE LAW CLAIM FOR GENDER
                         DISCRIMINATION OR HOSTILE WORK
                         ENVIRONMENT..………..………………………....6

PROPOSITION IV           PLAINTIFFS MCCLAIN AND FLETCHER HAVE
                         NO VALID FEDERAL OR STATE LAW CLAIM
                         FOR RELIGIOUS DISCRIMINATION…..……….10

PROPOSITION V            PLAINTIFFS HAVE NO VIABLE CLAIM FOR
                         EEOC RETALIATION………………………....12

PROPOSITION VI           PLAINTIFFS HAVE NO VIABLE 42 U.S.C. § 1983
                         CLAIMS…………………………………………...13

PROPOSITION VII          PLAINTIFFS HAVE NO VIABLE STATE
                         CONSTITUTIONAL CLAIMS…………………...17

PROPOSITION VIII         PLAINTIFFS HAVE NO VIABLE CLAIM UNDER
                         THE ORA……………………………………………20

PROPOSITION IX           THERE ARE NO VIABLE CLAIMS UNDER THE

REHABILITATION ACT OR ADA………………22

PROPOSITION X          PLAINTIFFS HAVE NO VIABLE CLAIM FOR
                       FMLA RETALIATION……………………………25

PROPOSITION XII        MOSS HAS NO VIABLE EQUAL PAY ACT
                       CLAIM……………………………………………..26

PROPOSITION XIII       PLAINTIFFS    HAVE    NO    STATE    LAW
                       NEGLIGENCE   OR   NEGLIGENCE   PER   SE
                       CLAIM……………………………………………...28

PROPOSITION XIV        ALL   OF   PLAINTIFF   FLETCHER'S   CLAIMS
                       SHOULD BE DISMISSED………………………..30

**CASES**                                                                    **PAGES**

*Baker v. Loveland*, 686 F. App'x 619, 620 .................................................... 3, 4

*Barrios v. Haskell County Public Facilities Authority*, 2018 OK 90,.............................. 19

*Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 408, 117 S.Ct. 1382.......................................................................................... 16

*Buonanno v. AT&T Broadband, LLC*, 313 F.Supp.2d 1069 ............................................ 11

*Burns v. Holcombe*, No. 09–CV–152–JHP, 2010 WL 2756954 ........................................ 29

*Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282 ..................................................... 25

*Carter v. Morris*, 164 F.3d 215 ........................................................................................ 17

*Chavez v. New Mexico*, 397 F.3d 826 ............................................................................... 9

*Church v. City of Huntsville*, 30 F.3d 1332........................................................................ 17

*Collier v. Insignia Financial Group*, 1999 OK 49, ¶ 13, 981 P.2d 321, 325 .................... 10

*Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620........................................................... 7

*Davis v. U.S. Postal Serv.*, 143 F.3d 1334......................................................................... 9

*Doyal vv. Oklahoma Heart, Inc.*, 213 F.3d 492 ................................................................ 24

*Duncan v. City of Nichols Hills*, 1996 OK 16, 913 P.2d 1303, 1309................................. 10

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774, 135 S.Ct. 2028 ............. 12

*EEOC v. JBS USA, LLC*, 339 F.Supp.3d 1135.................................................................. 12

*EEOC v. Jetstream Ground Services, Inc.*, 134 F. Supp. 3d 1298..................................... 11

*EEOC v. PVNF, L.L.C.*, 487 F.3d 790................................................................................ 7

*Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 788, 118 S.Ct. 2275 ....................... 9

*Fletcher v. Raemisch*, 768 Fed.Appx. 825 ......................................................................... 3

*Fuller v. Odom*, 1987 OK 64 ........................................................................................ 28

*Fumi v. Bd. of Cty. Comm'rs of Rogers Cty.*, No. 10-CV-769-TCK, 2011 ..................... 30

*GJA v. Oklahoma Department of Human Services*, 2015 OK CIV APP 32 ..................... 18

*Gross v. Burggraf Const. Co.*, 53 F.3d 1531 ................................................................... 8

*Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 ...................................................... 6

*Guevara v. Best Western Stevens Inn, Inc.*, 78 Fed.Appx. 703 ....................................... 12

*Hall v. Belmon*, 935 F.2d 1106 ...................................................................................... 26

*Harsco Corp. V. Renner*, 475 F.3d 1179 ......................................................................... 7

*Hazen Paper*, 507 U.S. at 609 ........................................................................................ 5

*Jackson v. Oklahoma City Public Schools*, 2014 OK CIV APP 61 ................................. 29

*Johnson v. Sedwick County Sheriff's Dep't*, 461 Fed. Appx. 756 .................................. 24

*Jurczyk v. Coxcom, LLC*, 191 F.Supp.3d 1256 .............................................................. 26

*Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220 .............................................. 8

*Kochert v. Lindsay Mun. Hosp. Auth.*, 2019 WL 4581361 ............................................ 19

*Lankford v. City of Hobart*, 73 F.3d 283 ....................................................................... 17

*Maldonado v. City of Altus*, 433 F.3d 1294 .................................................................... 7

*Mann v. Boatwright*, 477 F.3d 1140 ............................................................................... 3

*Markham v. Rios*, 2019 WL 4941368 ............................................................................. 19

*Martinez v. Potter*, 347 F.3d 1208 ................................................................................. 13

*McBride v. Peak Wellness Center, Inc.*, 688 F.3d 698 ..................................................... 7

*McDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437 .......................................................... 23

*McGeshick v. Principal*, 357 F.3d 1146 ........................................................................ 23

*Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164 .......................................25, 26

*Monell v. New York City Dept. of Social Services*, 436 U.S. 658 ..................................... 15

*Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022 ................................................ 14

*Morgan v. Hilti, Inc.*, 108 F.3d 1319 ................................................................................ 23

*Nasious v. Two Unknown B.I.C.E. Agents at Arapahoe County Justice Center*, 492 F.3d 1158................................................................................................................................ 3, 4

*New Home Appliance Center, Inc. v. Thompson*, 250 F.2d 882. ........................................ 3

*Nulf v. International Paper Co.*, 656 F.2d 553, 560........................................................... 27

*Oklahoma Public Employees Ass'n v. State ex rel. Oklahoma Office of Personnel Management*, 2011 OK 68................................................................................................ 20

*Pastran v. K-Mart Corp.*, 210 F.3d 1201 ......................................................................... 26

*Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1291............................................. 15

*Pendleton v. Bd. of Cty. Commissioners for Oklahoma Cty.*, 2019 WL 4752269 ........... 19

*Power v. MJB Acquisition Corp.*, 184 F.3d 1147.............................................................. 22

*Pushkin v. Regents of University of Colorado*, 658 F.2d 1372 ......................................... 22

*Riggs,* 497 F.3d at 1114 ...................................................................................................... 5

*Rivera v. City and County of Denver*, 365 F.3d 912 .......................................................... 5

*Robbins v. Oklahoma*, 519 F.3d 1242 ................................................................................ 4

*Russell v. Phillips 66 Company*, 184 F.Supp.3d 1258 ...................................................... 24

*Salazar v. City of Oklahoma City*, 1999 OK 20, ¶ 26, 976 P.2d 1056 ............................. 28

*Fulton v. People Lease Corp.*, 2010 OK CIV APP 84 ................................................... 6, 10

*Sioux City Bridge Co. v. Dakota Co.*, 260 U.S. 441, 445, 23 S.Ct. 190............................ 14

*Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955 ............................................... 25

*Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355 ............................................................... 27

*Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160 ..................................... 8

*Teigen v. Renfrow*, 511 F.3d 1072 ...................................................................................... 14

*Thomas v. National Association of Letter Carriers*, 225 F.3d 1149 ................................. 11

*Tidwell v. Fort Howard Corp.*, 989 F.2d 406 ..................................................................... 27

*Trujillo v. Univ. of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998) ...... 8

*Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987 ............................................................ 25

*Twombly, supra,* 550 U.S. 544 .............................................................................................. 4

*Velasquez v. Frontier Medical Inc.*, 375 F.Supp. 2d 1253 ............................................. 8, 9

*Village of Willowbrook v. Olech*, 528 U.S. 562 .................................................................. 14

*Washington v. Davis*, 426 U.S. 299, 241, 96 S.Ct. 2040 ................................................... 14

*Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205 ................................................................ 12

*White v. City of Tulsa, Okla.*, No. 13-CV-128-TCK-PJC, 2013 WL 4784243 ................ 30

*White v. York Int'l Corp.*, 45 F.3d 357 .............................................................................. 23

*Wood v. City of Topeka, Kan.,* 90 F.Supp.2d 1173 ........................................................... 15

*Woodman v. Runyon*, 132 F.3d 1330, 1337 (10th Cir. 1997) ............................................ 22

## **Federal Rules**

Fed. R. Civ. P. 8 ............................................................................................................. 3, 4

Fed. R. of C. P. 12 ........................................................................................................ 1, 30

Fed. R. of C. P. 41 ............................................................................................................. 4

## Oklahoma Statues

12 O.S. § 2004 ...................................................................................................... 30

25 O.S. § 1101 .............................................................................................. 6, 9, 10

19 O.S. § 22 .............................................................................................. 18, 19, 20

51 O.S. § 24A .................................................................................................. 20, 21

## United States Constitution

42 U.S.C. § 1983 ........................................................................................ 15, 16, 17

29 U.S.C. § 2615 .................................................................................................. 25

29 U.S.C. § 623 ...................................................................................................... 5

29 U.S.C. § 794 .................................................................................................... 22

42 U.S.C. § 12112. ............................................................................................... 23

U.S.C. § 2000 ......................................................................................................... 6

## <u>LIST OF EXHIBITS</u>

Exhibit 1    (unpublished case) *Pendleton v. Bd. of Cty. Commissioners for Oklahoma Cty.*, 2019 WL 4752269, at *12 (W.D. Okla. Sept. 30, 2019)

Exhibit 2    (Unpublished case) *Kochert v. Lindsay Mun. Hosp. Auth.*, 2019 WL 4581361, at *5 (W.D. Okla. Sept. 19, 2019)

Exhibit 3    (unpublished case) *Markham v. Rios*, 2019 WL 4941368, at *4 (W.D. Okla. Apr. 3, 2019)

Exhibit 4    (unpublished case) *Burns v. Holcombe*, No. 09–CV–152–JHP, 2010 WL 2756954, at *13 (E.D. Okla. July 12, 2010)

Exhibit 5    (unpublished case) *Fumi v. Bd. of Cty. Comm'rs of Rogers Cty.*, No. 10-CV-769-TCK, 2011 WL 4608296, at *6-7 (N.D. Okla. Oct. 3, 2011)

Exhibit 6    (unpublished decision) *White v. City of Tulsa, Okla.*, No. 13-CV-128-TCK-PJC, 2013 WL 4784243, at *5 (N.D. Okla. Sept. 5, 2013)

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)  RONDA MOSS; at al. | ) |
|          Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 22-CV-00127-SLP |
| | ) |
| (1)  CANADIAN COUNTY EX REL THE | ) |
|       BOARD OF COUNTY COMMISSIONERS, et al | ) JURY TRIAL DEMANDED |

## DEFENDANT BOARD'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT

Defendant Board of County Commissioners of Canadian County ("Defendant" or "the Board") submits its Motion to Dismiss Plaintiff's Second Amended Complaint[1] (Dkt. 1-23) pursuant to Fed. R. of C. P. 12(b)(6) for failure to state a claim for relief.  Plaintiffs have failed to allege facts which would plausibly support any of the claims against the Board. As Plaintiffs have already amended their Complaint twice, further amendment would be futile and the claims should be dismissed.

## STATEMENT OF THE CASE

Plaintiffs have brought suit against the Defendants Board, Judge Hughey, Nacole Majors, Cedric Mills, and Melanie Johnson for alleged state and federal employment law violations stemming from their employment at the Canadian County Children's Justice Center ("CCCJC"). They have made multiple claims regarding gender discrimination, age

---

[1] Plaintiffs filed a Second Amended Petition in the District Court for Canadian County, Oklahoma (Dkt. 1, Ex. 3). Defendants then removed the action to this Court. Defendant will refer to the Second Amended Petition as the Second Amended Complaint for ease of reference in terms of the Federal Rules of Civil procedure and federal judicial opinions.

discrimination, violations of their free speech rights and freedom of religion, violations of the Americans with Disabilities Act and the Rehabilitation Act of 1973, violations of the Family and Medical Leave Act, violations of public policy, retaliation, various state constitutional claims, various state common law claims, and a variety of other claims related to their employment which are not as easily classified and described. The unreasonable and unmanageable length of the Second Amended Complaint and the amount of allegations and extraneous information contained in its 1,039 paragraphs make it difficult, if not impossible, to fully address all the claims and allegations against the Board, though the causes of action which are obviously directed at the Board are addressed below.

It should be noted that Plaintiffs' counsel is actively promoting that she is running against Defendant Hughey for his Judgeship, and is therefore herself seeking to become the judge Plaintiffs claim is statutorily responsible for overseeing the CCCJC. That, combined with the many facts alleged in the Second Amended Complaint which contain political allegations entirely unrelated to Plaintiffs' employment claims, demonstrate that these claims are politically motivated and premised on political animus rather than actual violations of state and federal law.

## **STANDARD OF REVIEW**

Due to the extreme number of claims in Plaintiffs' Second Amended Complaint, and limited on space on this Motion, Defendant Board adopts and incorporates the standard of review described in the individual Defendants' corresponding Motions to Dismiss (Dkt. 16), as if fully stated herein.

I.      **PLAINTIFFS FAILED TO COMPLY WITH RULE 8 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Rule 8(a)(2) of the Federal Rules of Civil Procedure unequivocally states that that a "pleading that states a claim for relief **must** contain: (2) a **short and plain** statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). The rule mandating a short and plain statement in complaints limits Plaintiffs to concisely stating alleged facts upon which relief may be granted. *New Home Appliance Center, Inc. v. Thompson*, 250 F.2d 882, 883 (10th Cir. 1957). Plaintiffs' Second Amended Complaint does not include a short and plain statement of their claims. Rather, it is eighty-eight (88) pages in length, containing one thousand thirty-nine (1,039) paragraphs of allegations against the various Defendants in this case and nineteen separate causes of action arising under both federal and state laws, as well as state common law. The Tenth Circuit has long recognized that defendants are prejudiced by having to respond to "wordy and unwieldy" pleadings such as this one. *Nasious v. Two Unknown B.I.C.E. Agents at Arapahoe County Justice Center*, 492 F.3d 1158, 1163-64 (10th Cir. 2007) (citing *Mann v. Boatwright*, 477 F.3d 1140, 11148 (10th Cir. 2007). This is particularly true when allegations are buried amongst irrelevant, immaterial, or repetitive allegations and made unintelligible by the sheer length of the complaint. *See Baker v. Loveland*, 686 F. App'x 619, 620 (10th Cir. 2017); *Fletcher v. Raemisch*, 768 Fed.Appx. 825, 826 (10th Cir. 2019).

Defendant Board is certainly prejudiced by having to address 1,039 paragraphs of often repetitive and immaterial allegations. This is particularly true given that many of the paragraphs contain broad, generic allegations which directly or indirectly involve multiple

3

Plaintiffs and multiple Defendants, and allegations that the CCCJC (which is neither a Defendant in this case nor an entity subject to suit) took certain actions, but not which individuals allegedly took those actions[2].  As a result, the Complaint fails to provide fair notice of what Plaintiffs' claims are and the grounds upon which they rest, which is required by Rule 8. *Twombly, supra,* 550 U.S. 544 at 555. Courts are specifically authorized to dismiss actions for failure to comply with the Federal Rules of Civil Procedure. *Nasious, supra,* 492 F.3d at 1161. Rule 41(b) permits courts to order an involuntary dismissal of the case, and violating the requirements of Rule 8 is an appropriate basis for dismissal when a Complaint is so impossible to navigate and construe that defendants do not have fair notice of the claims brought against them. *Baker, supra,* 686 F. App'x at 622.

Because Plaintiffs have failed to comply with the basic requirements of Rule 8 in their third version of the Complaint, the Second Amended Complaint should be dismissed.

## II.   PLAINTIFFS HAVE NO VALID FEDERAL OR STATE LAW AGE DISCRIMINATION CLAIMS

Though the violation of Rule 8 should cause the Second Amended Complaint to be dismissed in its entirety, Defendant Board additionally addresses particular claims, in the order of which they are brought. In their First Cause of Action, Plaintiffs Moss, McClain,

---

[2] Defendant additionally notes that in civil rights claims brought pursuant to 42 U.S.C. § 1983 against multiple governmental actors, the Complaint must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Plaintiffs have brought such claims in this suit.

Wehmuller and Barton have alleged claims of age discrimination by the Board in violation of the Age Discrimination in Employment Act (ADEA) "and/or" the Oklahoma Anti-Discrimination Act, specifically that they were terminated because of their age. (Doc. 1, Ex. 23, ¶ 666). They have failed to allege facts sufficient to state a claim under both the ADEA and the OADA and the claims should be dismissed.

The (ADEA) prevents an employer for discharging "any individual…because of such individual's age." 29 U.S.C. § 623(a)(1). This protection extends to individuals who are 40 years old or older. *Id.* at § 623(a). To succeed in an employment discrimination lawsuit under the ADEA, a plaintiff "must prove that the challenged employment action was motivated, at least in part, by age." *Riggs,* 497 F.3d at 1114. In other words, Plaintiffs must either present direct evidence that their terminations were the result of discriminatory intent or present circumstantial evidence sufficient to create an inference of a discriminatory motive. *Id.* While Plaintiffs have alleged they were a member of the class of individuals protected by the ADEA, they have not alleged that they were doing satisfactory work or that after they were terminated that their positions were filled by younger people. *Rivera v. City and County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004).

Rather, they allege disparate treatment attributed to multiple other factors throughout the Complaint. "There is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Hazen Paper*, 507 U.S. at 609, 113 S.Ct. 1701. The ADEA simply does not authorize a mixed-motive age discrimination claim. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175,

129 S.Ct. 2343, 2350, 174 l.Ed.2d 119 (2009). But that is precisely what Plaintiffs are attempting to do here. To bring a disparate treatment claim pursuant to the ADEA, Plaintiffs must allege a "but-for causal relationship" existed between their age and the alleged discrimination and that those particular events would not have occurred without it. *Id.* The multiple allegations made by Plaintiff do not at all claim a but-for causal relationship exists between the employment decisions and their ages. They seem to have included an ADEA claim simply because they happen to be over age 40.

Plaintiffs assert the same allegations in an effort to state an age discrimination claim in violation of the OADA, 25 O.S. §§ 1101-1901. The stated purposed of the OADA is to implement the policies and law embodied in several federal statutes, including Title VII and the ADEA. *See Fulton v. People Lease Corp.*, 2010 OK CIV APP 84, ¶ 16, 241 P.3d 255, 261. Thus for the same reasons Plaintiffs' ADEA age discrimination claims fail, their OADA age discrimination claims and *Burk* tort claims based on the OADA also fail and should be dismissed.

## III.   PLAINTIFFS HAVE NO VALID FEDERAL OR STATE LAW CLAIM FOR GENDER DISCRIMINATION OR HOSTILE WORK ENVIRONMENT

In their Second and Third Causes of Action, Plaintiffs Moss, McClain, Wehmuller, Goodfellow, and Barton allege violations of Title VII and the OADA for gender discrimination and, along with Plaintiffs Fletcher and Hardaway, allege a hostile work environment claim. Title VII protects employees from discrimination based on race, color, religion, sex or national origin.42. U.S.C. § 2000(e). To succeed on a Title VII gender discrimination claim, Plaintiffs must establish (1) that they are members of a protected

6

class; (2) that they suffered an adverse employment action; and (3) that such adverse action took place under circumstances giving rise to an inference of discrimination." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012); *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). While Plaintiffs Moss, McClain, Wehmuller, Goodfellow, and Barton have alleged they are members of a protected class and that they were treated differently on the basis of their sex/gender, the numerous facts alleged by them do not indicate that they were actually treated differently due to their gender or that any adverse employment actions complained of took place under circumstances giving rise to an interference of discrimination.  "In a sex discrimination claim under Title VII, the plaintiff must show, among other things, that she was discriminated against *because* of her sex." *McBride v. Peak Wellness Center, Inc.*, 688 F.3d 698, 711 (10th Cir. 2012) (citing *Harsco Corp. V. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007). And that that the discrimination complained of was intentional due to the plaintiff's gender. *Maldonado v. City of Altus*, 433 F.3d 1294, 1307 (10th Cir. 2006).

Here, the aforementioned Plaintiffs have not set forth any allegations which give rise to an inference of discrimination against female employees which occurred based on sex. To the contrary, they actually allege preferential treatment was given to other female employees in terms of raises and promotions and have not alleged any facts which support that they were terminated *because* they were female. They have also failed to allege that similarly situated males were treated differently than they were, which is required to prevail on a disparate treatment claim. *Velasquez v. Frontier Medical Inc.*, 375 F.Supp. 2d 1253,

1281 (D.N.M. 2005) (citing *Trujillo v. Univ. of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998). Although Plaintiff Moss alleges at ¶ 680 that she was "allegedly fired" over rolling her eyes while Defendant Mills was not counseled for alleged verbally harassment and physical intimidation, there is no factual allegation which supports any purported difference in treatment was due to Moss's gender. Throughout the Second Amended Complaint, Moss alleges her termination was the result of numerous other motives which had nothing to do with her gender. "If [an] employer's differential treatment of similarly-situated employees is "trivial or accidental or explained by a nondiscriminatory motive," such treatment is insufficient to create an inference of discrimination." *Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1168 (10th Cir. 2007) (quoting *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000). The remaining Plaintiffs making the gender discrimination claim do not identify any instances of similarly-situated males being treated differently on the basis of gender.

In terms of Plaintiffs' hostile work environment claim, the claim appears to be one based on gender discrimination brought pursuant to Title VII. Such a claim can succeed only when a plaintiff has been subjected to a steady stream of vulgar or offensive speech or material *based on gender*. *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1539 (10th Cir. 1995). In order to demonstrate a hostile work environment exists, a plaintiff "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment." *Velasquez, supra,* at 1263 (citing *Davis v. U.S. Postal Serv.*, 143 F.3d 1334, 1341 (10th Cir. 1998)). While Plaintiffs McClain, Wehmuller, Hardaway, Fletcher, Goodfellow, and Barton allege that was the case at the CCCJC, they fail to allege facts which support that the purported hostile environment was gender-based. Title VII only protects against discrimination on the basis of race, color, religion, sex, or national origin, it is not a "general civility" code of workplace conduct. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 788, 118 S.Ct. 2275, 2283-84, (1998). Alleging severity and pervasiveness of offensive conduct as Plaintiffs have done here is not enough, Plaintiffs must prove they were the objects of harassment *because of their gender* or that that the allegedly harassing conduct was the product of gender hostility. *Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005).  In this case, the individuals bringing the claims are both male and female and the factual allegations indicate the allegedly hostile environment was gender-neutral, geared toward, directed at, and affecting both male and female employees. (Doc. 1, Ex. 23, ¶696-699, 717-720). As a result, Plaintiffs have failed to state a claim for hostile work environment in violation of Title VII and the claim should be dismissed.

Plaintiffs assert the same allegations in an effort to state a gender discrimination claim in violation of the OADA, 25 O.S. §§ 1101-1901. The purpose of the OADA is to

> Provide for execution within the state of the policies embodied in the Federal Civil Rights Act of 1964, the federal Age Discrimination in Employment Act of 1967 and Section 504 of the federal Rehabilitation Act of 1973 to make uniform the law of those states which enact this act, and to provide rights and

> remedies substantially equivalent to those granted under the
> federal Fair Housing Law.

*Collier v. Insignia Financial Group*, 1999 OK 49, ¶ 13, 981 P.2d 321, 325 (quoting 25 O.S.

§ 1101). Plaintiffs allege in their Second Amended Complaint that the elements required

to prove gender discrimination and hostile work environment are substantially the same

under the OADA as under Title VII (See Doc. 1, Ex. 23, fn. 19 and 20). And the stated

purposed of the OADA is to implement the policies and law embodied in several federal

statutes, including Title VII. *See Fulton v. People Lease*, 2010 OK CIV APP 84, ¶ 16.  Thus

their OADA claim and *Burk* tort claim premised on the OADA should be dismissed for the

same reasons their Title VII gender discrimination claims should be dismissed.

Additionally, the OADA provides only for an administrative remedy for claims of

gender-based sexual harassment/ hostile work environment claims. *Collier v. Insignia*

*Financial Group*, 1999 OK 49, ¶ 13, 981 P.2d 321, 325 (citing *Duncan v. City of Nichols*

*Hills*, 1996 OK 16, 913 P.2d 1303, 1309). Thus this Court lacks subject matter jurisdiction

over such claims brought pursuant to the OADA and not Title VII.

## IV.   PLAINTIFFS MCCLAIN AND FLETCHER HAVE NO VALID FEDERAL OR STATE LAW CLAIM FOR RELIGIOUS DISCRIMINATION

In the Fourth Cause of Action, Plaintiffs McClain and Fletcher have brought claims

against the Board for religious discrimination pursuant to Title VII and the OADA. Both

allege that they were discriminated against because they are Christians and were allegedly

told that they could not participate in religious study with co-workers during their breaks.

(Doc. 1, Ex. 23, ¶¶ 730, 732-733). But this allegation falls short of any fact pattern which

could establish a Title VII violation based on religion. Employees have a claim of direct religious discrimination when they contend they received unfavorable treatment "motivated by an animus directed against" [their] particular religious persuasion." *Buonanno v. AT&T Broadband, LLC*, 313 F.Supp.2d 1069, 1080 (D.Colo. 2004). While McClain and Fletcher allege that they are Christians who wished to engage in Bible study on their break time, they have not alleged any facts which support there was an animus specifically toward Christianity or specifically toward members of the Christian faith. They have made no allegations that members of other religious persuasions were permitted to engage in religious study while Plaintiffs were not. Consequently, they have failed to state a claim for direct religious discrimination.

They have also failed to state a claim for religious discrimination under a failure to accommodate or disparate treatment theory. To succeed on that claim, Plaintiffs must prove they held a bona fide religious belief that conflicts with an employment requirement, that they informed their employer of that belief, and that they were fired for failure to comply with the conflicting employment requirement. *Thomas v. National Association of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000). A conflict between bona fide religious beliefs and employment requirements exists in situations such as the following: where a strict observance of the Sabbath is required and prevents employees from working on a particular day (*Id.* at 1153); where religious beliefs require the wearing of headscarves while performing work duties (*see EEOC v. Jetstream Ground Services, Inc.*, 134 F. Supp. 3d 1298 (D.Colo. 2015); and where members of a religious persuasion are required to pray

11

on a schedule (*see EEOC v. JBS USA, LLC*, 339 F.Supp.3d 1135 (D.Colo. 2018). Here, Plaintiffs have not alleged that they held a bona fide religious belief regarding Bible study, that they informed their supervisors or the Board that they required accommodation for that belief, or that they were terminated for failing to comply with an employment requirement. Although McClain and Fletcher allege they were threatened "with adverse employment action if they did [sic] comply with their directions" to cease engaging in religious study, they have not alleged they continued the Bible study in spite of that and were fired *as a result* of that continuation. (See Doc. 1, Ex. 23, ¶¶ 730-733). Religious practices cannot be accorded disparate treatment and must be accommodated. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774, 135 S.Ct. 2028, 192 L.Ed.2d 35 (2015). However, Title VII is not violated without discriminatory motive. *Id.* Plaintiffs have failed to establish facts which establish a discriminatory motive based on religion, thus the claim should be dismissed.

## V.    PLAINTIFFS HAVE NO VIABLE CLAIM FOR EEOC RETALIATION

In their Fifth Cause of Action, all Plaintiffs allege that they were retaliated against for asserting their rights under the EEOC. To succeed on a retaliation claim, they must show that they engaged in a protected activity under Title VII or the ADEA, that they subsequently suffered an adverse employment action, and that there was a causal connection between the protected activity and the adverse employment action. *Guevara v. Best Western Stevens Inn, Inc.*, 78 Fed.Appx. 703, 705 (10th Cir. 2003) (citing *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1213 (10th Cir. 2003). However, Plaintiffs

Goodfellow and Hardaway have not alleged that they filed complaints with the EEOC which could feasibly include claims of retaliation for filing previous EEOC complaints. (Doc. 1, Ex. 23, ¶¶ 40-120, 740-745). Plaintiffs who fail to file formal EEOC complaints regarding allegedly retaliatory incidents have failed to exhaust their administrative remedies and are barred from litigating such claims. *Martinez v. Potter*, 347 F.3d 1208, 1210-1211 (10th Cir. 2003).  Because Goodfellow and Hardaway filed each only a single EEOC claim, they are barred from pursuing any claim against the Board that they were retaliated against for filing the EEOC claims.

## VI.    PLAINTIFFS HAVE NO VIABLE 42 U.S.C. § 1983 CLAIMS

Plaintiffs' Ninth Cause of Action alleges the Board is liable under 42 U.S.C. § 1983 for "enabling its agents and employees to act with deliberate indifference to Plaintiffs' rights under the First Amendment, to be free from sexual harassment, a hostile work environment, age discrimination, and retaliation in violation of state and federal law, and a lack of compliance with Title VII." (Doc. 1, Ex. 23, ¶ 848). It is unclear from this statement, the 847 paragraphs which proceed it, or the 191 paragraphs which follow it, whether Plaintiffs are attempting to allege § 1983 liability for their First Amendment claims and for failing to enforce title VII, or whether they are attempting to bring separate equal protection violation claims. Regardless, Plaintiffs have not invoked the protections of the Equal Protection clause and have failed to state an actionable claim that is plausible on its face regarding alleged constitutional rights to be free sexual harassment, a hostile work environment, age discrimination, and retaliation in violation of state and federal law.

13

Section 1 of the Fourteenth Amendment of the United States Constitution states that

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. The purpose of the equal protection clause "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, (2000) (quoting *Sioux City Bridge Co. v. Dakota Co.*, 260 U.S. 441, 445, 23 S.Ct. 190, 67 L.Ed. 340 (1923)). The equal protection clause itself does not create any substantive rights, but instead "embodies a general rule that States must treat cases alike but may treat unlike cases accordingly." *Teigen v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007).

    To successfully state a claim for an Equal Protection violation, Plaintiff must allege that a defendant acted with discriminatory intent based on Plaintiff's protected status, and the alleged fact must, at the very least, create an inference of discriminatory intent. *See Washington v. Davis*, 426 U.S. 299, 241, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) and *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). As has already been thoroughly discussed in propositions II and III above, Plaintiffs have failed to state a claim for gender discrimination and a hostile work environment emanating therefrom. An action for age discrimination is not actionable under 42 U.S.C. § 1983, as the ADEA provides the exclusive remedy for such claims. *Wood v. City of Topeka, Kan.,*

14

90 F.Supp.2d 1173, 1187 (D.Kans. 2000). Plaintiffs therefore have not stated any equal protection claims which are plausible on their face.

Plaintiffs have also failed to state a claim for First Amendment retaliation. Plaintiffs' Seventh and Eighth causes of action against individually named Defendants concern retaliation for exercising free speech rights; thus the Board assumes that free speech retaliation is also the basis for the § 1983 municipal liability claim against the Board. In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the U.S. Supreme Court held that a governmental entity is only liable under § 1983 when the constitutional injury can fairly be said to have been caused by that entity's own policies and customs. *Id.* at 694. The actions of the governmental entity itself must be the moving force behind the alleged constitutional violation. *Id*. In other words, there is no § 1983 liability based upon the doctrine of *respondeat superior* or vicarious liability for the alleged actions of its employees. Governmental liability for a constitutional violation "attaches where – and only where – the entity makes a deliberate choice to follow a course of action from among various alternatives." *Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1291, 89 L.Ed.2d 425 (1986).

Consequently, in order to establish municipal liability against the County under § 1983, Plaintiff must allege facts sufficient to demonstrate their constitutional rights were violated AND that such violations were caused by a policy, practice, or custom of the Board, or that the official with final policy-making authority personally participated in the alleged constitutional violation. *See Jett v. Dallas Independent School District*, 491 U.S.

15

701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (municipality cannot be held liable under §
1983 unless the act complained of is that of a final policymaker or a custom or usage is
shown). Furthermore, it is not enough for a § 1983 plaintiff merely to identify conduct
properly attributable to the governmental entity. *Board of County Commissioners of Bryan
County, Oklahoma v. Brown*, 520 U.S. 397, 408, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).
Plaintiff must also allege facts which demonstrate that, through its *deliberate conduct*, the
municipality itself was the "moving force" behind the injury alleged. *Id.* "Where a plaintiff
claims that the municipality has not directly inflicted an injury, but nonetheless has caused
an employee to do so, rigorous standards of culpability and causation must be applied to
ensure that the municipality is not held liable solely for the actions of its employee. *Id.*

Plaintiffs' Ninth cause of action (¶¶ 847-868) contains various complaints that
Judge Hughey hired, refused to investigate, and refused to fire two facility directors who
engaged in sexual harassment and gender discrimination, and allege that the Board failed
to supervise and train him, which resulted in further sexual harassment and gender
discrimination. It contains no allegations the Board has a policy, practice, or custom of
violating employees' First Amendment free speech rights. In fact, other allegations they
made concerning actions taken by the Board regarding previous facility director Bill
Alexander demonstrate that the Board had no policy, practice, or custom of First
Amendment retaliation or of tolerating sexual harassment in the workplace. Plaintiffs
specifically allege that prior to Kern becoming director, employees of the CCCJC reported
sexual harassment by Alexander and a hostile work environment created by him by filing

EEOC complaints, and further allege that Alexander was investigated and ultimately terminated by the Board for those infractions. (¶¶ 256-257, 259, 262). In fact, they allege that swift action was taken against Alexander. (¶ 283). They do not allege that any employees were retaliated against by the Board for reporting Alexander's conduct.

Plaintiffs therefore have not identified any pattern or custom of violation of First Amendment rights or Equal Protection rights such that a policy could be inferred. In order for a governmental entity to be held liable for an informal practice or custom under § 1983, the practice must be "so permanent and well settled as to constitute a custom or usage with the force of law…In order to establish a custom, the actions must be persistent and widespread." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (internal citations and quotation marks omitted). In determining what level of persistent and widespread conduct will be sufficient to establish municipal liability, it is clear that "normally random acts" and "isolated incidents" fall short. *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994).  *See also Carter v. Morris*, 164 F.3d 215, 220 (4th Cir. 1999) (a "meager history of isolated incidents" is insufficient). Plaintiffs have not alleged any facts which indicate prior to their reporting Kerns that the Board had any persistent and widespread custom of violating employees' constitutional rights. The Ninth Cause of Action must therefore be dismissed.[3]

## VII.   PLAINTIFFS HAVE NO VIABLE STATE CONSTITUTIONAL CLAIMS

---

[3] Majors, Johnson, and Mills have contemporaneously filed a Motion to Dismiss (Dkt. 16). Defendant Board adopts and incorporates the Motion as fully stated herein.

In their Tenth Cause of Action, Plaintiffs Barton, Moss, McClain, Hardaway, Fletcher, and Wehmuller allege their free speech rights under Art. II § 22 were violated. Plaintiff Goodfellow alleges the same in the Eleventh Cause of Action. They all allege their right to enjoy gains of industry under Art. II § 2 was violated in the Twelfth Cause of Action. However, no Plaintiff has any right of action under Art. II § 2 or § 22 and the claims must be dismissed.

Plaintiff has no legal support or any logical basis for asserting that they have actionable rights under Art. 2, § 2 of the Oklahoma Constitution. The provisions states that "[a]ll persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry. Okla. Const. Art. 2, § 2. While Oklahoma courts have recognized private rights of action under different sections of the state constitution in other limited circumstances, no Oklahoma court or federal court sitting in Oklahoma has recognized a private right of action regarding the rights enumerated in § 2. "[N]ot every misfeasance, malfeasance and nonfeasance amounts to a violation of constitutional rights." *GJA v. Oklahoma Department of Human Services*, 2015 OK CIV APP 32, ¶ 45, 347 P.3d 310. To date, no Oklahoma Supreme Court decision, specifically has recognized a state constitutional violation based on the facts alleged by Plaintiffs.

The same is true for the right to free speech guaranteed by Art. II, § 22. It states that "[e]very person may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press." Okla. Const. Art. 2, § 22. No Oklahoma court decision

18

of which the Board is aware has recognized a private right of action for a violation § 22 in an employment context. Because there is no legal precedent for recognizing a private right of actions under Art. 2, § 2 or § 22, Plaintiffs' state constitutional claims brought pursuant to those sections must fail.

In fact, on December 4, 2018, in *Barrios v. Haskell County Public Facilities Authority*, 2018 OK 90, 432 P.2d 233, the Oklahoma Supreme Court definitively and conclusively answered the question of whether any such claim can be brought pursuant to the Oklahoma Constitution.  The Court there explicitly examined the certified question of whether inmates can bring suit under the Oklahoma Constitution. *Id.* at ¶1.  The Oklahoma Supreme Court clearly found that any such claim under the Oklahoma Constitution is now a "tort" governed by the Oklahoma Governmental Tort Claims Act ("OGTCA").  The Oklahoma Supreme Court specifically relied on the fact that the Oklahoma legislature had amended the OGTCA to specify that the OGTCA applies even to tort suits alleging violations of constitutional rights, and that this is a legislative determination to which the Courts must defer.  *Id.* at ¶ 15; *see also Pendleton v. Bd. of Cty. Commissioners for Oklahoma Cty.*, 2019 WL 4752269, at *12 (W.D. Okla. Sept. 30, 2019)(unpublished case, attached as Exhibit 1); *Kochert v. Lindsay Mun. Hosp. Auth.*, 2019 WL 4581361, at *5 (W.D. Okla. Sept. 19, 2019)(Unpublished case, attached as Exhibit 2) ("As noted in *Barrios*, the 2014 amendment effectively abrogated the *Bosh* claim by extending governmental immunity to so-called constitutional torts"); *Markham v. Rios*, 2019 WL 4941368, at *4 (W.D. Okla. Apr. 3, 2019)(unpublished case, attached as Exhibit 3), *report*

19

*and recommendation adopted*, 2019 WL 4039632 (W.D. Okla. Aug. 27, 2019)(all dismissing claims under the Oklahoma Constitution pursuant to *Barrios*).

## VIII.  PLAINTIFFS HAVE NO VIABLE CLAIM UNDER THE ORA

Plaintiffs allege in their Thirteenth Cause of action that the Board violated 51 O.S. § 24A.7(C) and 51 O.S. § 24A.5 of the Oklahoma Open Records Act ("ORA"). Plaintiffs allege that the Board failed to produce employee files on Defendants Hughey and Kern. Plaintiffs have not alleged that Defendant Hughey is an employee of the Board, and in fact, he is not. Per Plaintiff's own Second Amended Complaint, Defendant Hughey is an elected member of the judiciary. As such, he is not an employee of Canadian County, but instead serves the twenty-sixth judicial district of the State of Oklahoma. *See* 19 O.S. § 22. He may be assigned to serve in any district court within the state at any time. *See* 19 O.S. Rule 12. The Board cannot be held liable under the ORA for failing to disclose employee files for an individual whom it does not employ.

Furthermore, disclosure of all information in employee files is not required under the ORA. Public bodies such as the Board have discretion in determining that disclosure of certain private information contained in personnel records of public employees are an unwarranted invasion of the employee's privacy. *Oklahoma Public Employees Ass'n v. State ex rel. Oklahoma Office of Personnel Management*, 2011 OK 68, ¶4, 267 P.3d 838, 842. The Board may "weigh the employee's interest in non-disclosure against the public's interest in having access to the record." *Id.* Section 24A.7(A)(2) of the ORA contains a list of information which public bodies must keep confidential, but the use of the phrase "such

20

as" indicates that "there are other matters intended to be included within the statutory limits which are not specifically enumerated by the legislative language." *Id.* at ¶13. Thus there is no absolute requirement under Oklahoma law that every piece of information in an employee file must be produced. Furthermore, 51 O.S. § 24A.7(A)(1) permits public bodies to keep personnel records confidential which "relate to internal personnel investigation, including examination and selection material for employment, hiring, appointment, promotion, demotion, discipline, or resignation." 51 O.S. § 24A.7(A)(1).

While Plaintiffs' Thirteenth Cause of Action states that Plaintiffs merely *assume* that only partial records were produced on Kern. (Doc. 1, Ex. 23, ¶ 916), they appear to allege elsewhere in the Second Amended Complaint that records regarding Kern's previous employment history and previous lawsuits against him – which they claim should have been collected during the hiring process – were not produced. Such records are clearly selection material for employment, hiring, or appointment, and may be kept confidential per the ORA itself.

Finally, Plaintiffs allege they have a right to personnel files of Kern and Hughey pursuant to 51 O.S. 24A.7(C). However, that statute states that "[e]xcept as may otherwise be made confidential by statute, an employee of a public body shall have a right of access to his **own** personnel file." 51 O.S. 24A.7(C) (emphasis added). Plaintiffs have not alleged that they requested copies of their *own* personnel files and were denied access, they allege only that they requested access to the personnel files of Kern and Hughey. Consequently, Plaintiffs have failed to state a claim for a violation of the ORA.

**IX.    THERE ARE NO VIABLE CLAIMS UNDER THE REHABILITATION ACT OR ADA**

Plaintiff Barton alleges in Plaintiffs' Fifteenth Cause of Action that the Board is liable for violations of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act of 1973, and in the Sixteenth Cause of Action, Plaintiff McClain alleges the same. Neither Plaintiff has a viable claim for a violation of the Rehabilitation Act. The Rehabilitation Act prohibits discrimination against disabled individuals by entities or programs that receive Federal financial assistance. 29 U.S.C. § 794. *See also Pushkin v. Regents of University of Colorado*, 658 F.2d 1372, 1379 (10th Cir. 1981). For a Plaintiff to make a claim under the Rehabilitation act, he must demonstrate four factors:

> (1) plaintiff is handicapped under the Act; (2) he is "otherwise qualified" to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff.

*Power v. MJB Acquisition Corp.*, 184 F.3d 1147, 1151 (10th Cir. 1999) (citing *Woodman v. Runyon*, 132 F.3d 1330, 1337 (10th Cir. 1997). § 504 of the Rehabilitation Act provide that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance … For the purposes of this section, the term 'program or activity' means all of the operations of … a department, agency, special purpose district, or other instrumentality of a State or of a local government …"  29 U.S.C. § 794(a)-(b).

Under the ADA, employers are prohibited from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to . . .

discharge of employees . . . and other terms, conditions, and privileges of employment."

42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination under

the ADA, Plaintiffs Barton and McClain each must demonstrate

> (1) that she is a disabled person within the meaning of the
> ADA, *see McDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437,
> 1443 (10th Cir. 1996); (2) that she is qualified, that is, she is
> able to perform the essential functions of the job, with or
> without reasonable accommodations, *see id.*; and (3) that the
> employer terminated her employment under circumstances
> which give rise to an inference that the termination was based
> on her disability, *see White v. York Int'l Corp.*, 45 F.3d 357,
> 361 n. 6 (10th Cir. 1995).

*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). In employment discrimination

cases, the standards governing whether disability discrimination occurred in violation of

the ADA are the same standards used to determine whether disability discrimination

occurred in violation of the Rehabilitation Act. *McGeshick v. Principal*, 357 F.3d 1146,

1150 (10th Cir. 2004).

Therefore, to be considered disabled under both Acts, Plaintiffs must demonstrate

they have physical or mental impairments that substantially limit major life activities, that

there is a record of the impairment, and that the employer regarded them as having such an

impairment. *Id.* Barton alleges that her high blood pressure and depression kept her from

working at her particular job due to an alleged hostile work environment (Doc. 1, Ex. 23,

¶¶932, 935) and that the Board failed to engage in an interactive process when she sought

FMLA leave and additional time off from work for her high blood pressure. (Doc. 1, Ex.,

23, ¶¶ 937-938). Barton's ADA and Rehabilitation Act claim therefore necessarily fails

because she has not alleged that she was able to perform the essential functions of her job, with or without accommodation. She has alleged she was *not* able to perform the essential functions of her job at all, which required her to take leave, and that she had not determined whether reasonable accommodations were necessary. (Doc. 1, Ex., 23, ¶¶ 937-938, 939). McClain asserts substantially the same facts for herself regarding purported anxiety, but adds that she experienced a "high risk" pregnancy for which she took leave, though she does not allege any facts relating to the pregnancy to her employment other than she believes her supervisors should have known it was "high risk" based on a prior pregnancy. (Doc. 1, Ex. 23, ¶¶ 953, 960, 963).

Moreover, to have a qualifying disability under the ADA or Rehabilitation Act, courts consider whether the plaintiff is "unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [her] specific job." *Id.*   Being diagnosed with anxiety or depression does not alone qualify an individual as disabled under the ADA. *Russell v. Phillips 66 Company*, 184 F.Supp.3d 1258, 1268 (N.D. OK 2016) (citing *Johnson v. Sedwick County Sheriff's Dep't*, 461 Fed. Appx. 756, 759 (10th Cir. 2012). To qualify as a disability, the depression and anxiety "must substantially limit the…performance of a major life activity." *Id.* (citing *Doyal vv. Oklahoma Heart, Inc.*, 213 F.3d 492, 495-96 (10th Cir. 2000)). Major life activities include such things as seeing, hearing, eating, sleeping, learning, concentrating, and generally being able to take care of oneself. *Id.* (quoting Pub. L. No. 110-325, 122 Stat. 3553 of the ADA Amendments Act of 2008). Neither Barton nor McClain have alleged

24

this is the case. Instead, they have alleged only their ability to work was limited. Consequently, the claims they have brought pursuant to the ADA and the Rehabilitation Act should be dismissed for failure to state a claim.

## X.  PLAINTIFFS HAVE NO VIABLE CLAIM FOR FMLA RETALIATION

Plaintiffs Barton and McClain have also made a claim for FMLA retaliation in their Seventeenth Cause of Action, presumably in violation of 29 U.S.C. § 2615(a)(2). This section states than an employer may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Courts have interpreted that provision to create a theory of recovery for retaliation as a result of having taken FMLA leave. *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1004 (10th Cir. 2011) (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002)). Assuming *arguendo* that either Plaintiff was entitled to take FMLA leave, to succeed on an FMLA retaliation claim, Plaintiffs must show that

> (1) [they] engaged in a protected activity; (2) [Defendants] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action.

*Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (quoting *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006)). In addition, they are required to demonstrate "bad intent or 'retaliatory motive' on the part of the employer" in order to prove the third element of the prima facie case. *Id.* at 1287. They cannot "rely solely on temporal proximity of the leave and [their] [constructive]

termination, but instead must offer some other evidence of retaliatory motive." *Jurczyk v. Coxcom, LLC*, 191 F.Supp.3d 1256, 1266 (N.D. Okla. 2016) (citing *Metzler, supra,* at 1172). They must present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive. *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206-07 (10th Cir. 2000).

Here, Plaintiffs have not alleged facts sufficient to support that they were offered jobs in the kitchen upon their return from FMLA leave as retaliation for having taken or attempting to take that leave. Although they allege in ¶ 982 that they were retaliated against for exercising or attempting to exercise their rights under FMLA, conclusory allegations such as that one are insufficient to overcome a motion to dismiss. *Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiffs allege that they were constructively discharged while on FMLA leave, but also allege that they left their jobs because of the alleged ongoing harassment they endured following reporting the conduct of Kern. (Doc. 1, Ex. 23, ¶ 989-991). The retaliation claim seems to be based on being offered jobs in the kitchen rather than their previous jobs following their return from FMLA leave (Doc. 1, Ex. 23, ¶¶ 941, 966, 986), but there is no fact alleged other than temporal proximity which supports or indicates that jobs were offered in the kitchen in retaliation for taking FMLA leave. The claim for FMLA retaliation should therefore be dismissed.

## XII.   MOSS HAS NO VIABLE EQUAL PAY ACT CLAIM

In Plaintiffs' Eighteenth Cause of Action, Plaintiff Moss alleges a violation of the Equal Pay Act ("EPA") against the Board. Specifically, she alleges that she and Defendant Mills held the same position and title at the CCCJC and were paid the same wage, but that

Moss had more job duties than did Mills. To establish a prima case of an EPA violation, Moss "has the burden of proving that (1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances." *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997) (quoting *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir. 1993)). The "equal work" requirement of the EPA is not construed broadly. *Id.* Failure to provide equal pay for "comparable work" or "like jobs" is not actionable under the EPA. *Id.* (citing *Nulf v. International Paper Co.,* 656 F.2d 553, 560 (10th Cir. 1981)). The jobs compared must be substantially equal in terms of effort and responsibility in order to form a basis for an EPA action. *Id.* at 1364-65.

In this case, Moss has not alleged that her job and Mills' job were substantially equal in terms of effort and responsibility. She alleges that she simultaneously performed the job of assistant facility director while performing two other positions and that Mills had no such job duties or responsibilities. As a result, she has not alleged that her position and Mills' position were substantially equal in terms of effort and responsibility. When job duties are merely comparable and not substantially equal, there is no basis for an EPA claim. *Id.* at 1365. Moss simply has not alleged that a male employee with the same level of job duties Moss performed was paid more than she was. To the extent she is attempting to make an EPA claim on the grounds that her job and Mills' job were substantially equal because their titles were the same, she has failed to state an EPA claim on that basis as well

27

because she has alleged she and Mills received the same pay for that position. (Doc. 1, Ex. 23, ¶ 998, 1004). Her EPA claim should therefore be dismissed.

## XIII.  PLAINTIFFS HAVE NO STATE LAW NEGLIGENCE OR NEGLIGENCE PER SE CLAIM

In their Nineteenth Cause of Action, Plaintiffs allege a negligence and negligence per se claim under Oklahoma state law for the hiring, supervision, and training of Defendant Kern. However, the Board is exempt from liability for claims of negligent hiring, training and supervision pursuant to 51 O.S. § 155(5) of the Oklahoma Governmental Tort Claims Act ("OGTCA"). The OGTCA is the exclusive remedy by which an injured plaintiff may recover against an Oklahoma governmental entity in tort. *Fuller v. Odom*, 1987 OK 64, ¶¶ 3-4, 741 P.2d 449. *See also* 51 O.S. § 153(B). In that legislation, sovereign immunity for the state, its political subdivisions, and all employees acting within the scope of their employment was adopted and reaffirmed. 51 O.S. § 152.1(A). This immunity is subject to a limited waiver to the extent and the manner specifically provided for by the provisions of the other sections of the OGTCA. 51 O.S. § 152.1(B); *Salazar v. City of Oklahoma City*, 1999 OK 20, ¶ 26, 976 P.2d 1056, 1065-66.

Defendant Board is a political subdivision under the OGTCA. 51 O.S. § 152(11)(a). Accordingly, the Board may be liable for its torts or the torts of its employees in situations where private persons or entities would also be liable under state law. 51 O.S. § 153(A); see also *Salazar*, *supra*. However, the OGTCA also preserves certain limitations and exemptions from its general waiver of liability. 51 O.S. § 155; see also *Salazar*, *supra*. In other words, the state and its political subdivisions do not always consent to suit, but

28

rather retain their essential sovereign immunity in certain cases. The Board retains immunity for decisions regarding hiring, training, and supervision of its employees under 51 O.S. § 155(5). That section provides that a political subdivision such as the Board "shall not be liable if a loss or claim results from…[p]erformance of or the failure to exercise or perform any act or service which is the discretion of the…political subdivision or its employees." Hiring, training, and supervising decisions made by a political subdivision are always discretionary. *See Jackson v. Oklahoma City Public Schools*, 2014 OK CIV APP 61, ¶ 9, 333 P.3d 975.

In the *Jackson* case, the parents of a student that had allegedly been physically assaulted by a teacher sued the school district asserting, in part, a claim for negligent hiring, and supervision. The school district filed a motion for summary judgment arguing, in part, that it was immune from suit for the plaintiffs' claim for negligent hiring, and supervision pursuant to § 155(5) of the OGTCA. The Oklahoma Court of Civil Appeals upheld the trial court's grant of summary judgment on that issue because it is well-settled law that political subdivisions are completely exempt from liability for claims of negligent hiring, training, or supervision. *Id*. at ¶ 9.

Federal courts have interpreted the discretionary act exemption in the same way. In *Burns v. Holcombe*, No. 09–CV–152–JHP, 2010 WL 2756954, at *13 (E.D. Okla. July 12, 2010), the court held that "[t]he language of the GTCA as well as recent case law construing these provisions makes clear the state and/or a political subdivision is not subject to suit for discretionary acts such as hiring, supervising, and training

29

employees...")(unpublished decision attached hereto as Ex. 4). *See also Fumi v. Bd. of Cty. Comm'rs of Rogers Cty.*, No. 10-CV-769-TCK, 2011 WL 4608296, at *6-7 (N.D. Okla. Oct. 3, 2011)(unpublished decision attached hereto as Ex. 5)); *White v. City of Tulsa, Okla.*, No. 13-CV-128-TCK-PJC, 2013 WL 4784243, at *5 (N.D. Okla. Sept. 5, 2013) (unpublished decision attached hereto as Ex. 6).

Because Plaintiffs' negligence and negligence per se claims are based on the discretionary acts of hiring, training, and supervising Kern, the Board is exempt from the claims and they should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## XIV.   ALL OF PLAINTIFF FLETCHER'S CLAIMS SHOULD BE DISMISSED

All of Plaintiff Fletcher's claims should be dismissed for failure to comply with service pursuant to 12 O.S. § 2004(I). Pursuant to that statute, Plaintiff Fletcher had 180 days in which to obtain service on the Board and other Defendants. *Id.* Unlike the other Plaintiffs in this case, Fletcher had no attorney of record in this manner and was apparently proceeding as a pro se plaintiff from May 6, 2021 until the Second Amended Complaint was filed by Ms. Bussett on January 26, 2022.  (Doc. 1, Ex. 1; Doc. 1, Ex. 5; Doc. 1, Ex. 23, ¶ 291 & n. 12).  None of the motions to extend time to serve or to amend the petition were made on his behalf of Plaintiff Fletcher as Ms. Bussett was not representing him when those motions were filed. Plaintiff Fletcher's petition was therefore deemed dismissed on or about June 19, 2021 for lack of timely service. *See* 12 O.S. § 2004(I).  Therefore, all of the claims asserted by Plaintiff Fletcher should be dismissed.

30

Respectfully submitted,


s/ Jordan L. Miller
Jordan L. Miller, OBA No. 30892
COLLINS ZORN & WAGNER, PLLC
429 N.E. 50th Street, Second Floor
Oklahoma City, Oklahoma 73105
jlm@czwlaw.com
**Attorney for Defendants**
**Canadian County, Nacole Majors,**
**Melanie Johnson and Cedric Mills**


## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2022, I electronically transmitted the attached document via electronic mail to the following ECF registrants:

Rachel Bussett
BUSSETT LEGAL GROUP, PLLC
2201 N. Classen Blvd.
Oklahoma City, Oklahoma 73106
rachel@bussettlegal.com
*Attorney for Plaintiffs*


Robert S. Lafferrandre, OBA No. 11897
Jessica L. Dark, OBA No. 31236
PIERCE COUCH HENDRICKSON
 BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma  73106
rlafferrandre@piercecouch.com
jdark@piercecouch.com
*Attorneys for Defendant Daniel Kern*

31

Erin M. Moore
Office of the Attorney General
313 N.E. 21st Street
Oklahoma City, Oklahoma 73105
erin.moore@oag.ok.gov
*Attorney for Judge Bobby Hughey*

 s/ Jordan L. Miller
Jordan L. Miller