**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RONDA MOSS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Case No. CIV-22-127-SLP |
| | ) |
| CANADIAN COUNTY *ex rel*. THE BOARD | ) |
| OF COUNTY COMMISSIONERS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **O R D E R**

Before the Court are four related motions to dismiss Plaintiffs' Third Amended
Complaint (TAC).  First, Defendant Judge Bobby Hughey filed a Motion to Dismiss and
Brief in Support [Doc. No. 76], to which Plaintiffs responded [Doc. No. 91], and Judge
Hughey replied [Doc. No. 99].  Second, Defendant Daniel Kern filed a Motion to Dismiss
and Brief in Support [Doc. No. 77], to which Plaintiffs responded [Doc. No. 84], and
Defendant Kern replied [Doc. No. 94].  Third, Defendant Board of County Commissioners
of Canadian County (the "Board") filed a Motion to Dismiss and Brief in Support [Doc.
No. 74], to which Plaintiffs responded [Doc. No. 83], and the Board replied [Doc. No. 98].
Finally, Defendants NaCole Majors, Cedric Mills, and Melanie Johnson filed a Motion to
Dismiss and Brief in Support [Doc. No. 75], to which Plaintiffs responded, [Doc. No. 85],
and those Defendants replied [Doc. No. 97].  The motions are at issue.

## I.    Background[1]

Plaintiffs Ronda Moss, Melissa McClain, Erin Barton, Cassie Goodfellow, Donna Wehmuller, Paul Hardaway, and Robert Fletcher are seven former employees of Canadian County who worked at the Gary E. Miller Canadian County Children's Justice Center (CCCJC) in El Reno, Oklahoma.  TAC [Doc. No. 72] ¶ 1.  Each Plaintiff was over the age of forty during the relevant period, and Plaintiffs Moss, McClain, Barton, Wehmuller, and Goodfellow are women.  *Id.* ¶¶ 2-8.

Defendant Canadian County is a political subdivision of the State of Oklahoma managed through its Board of County Commissioners (the Board).  *Id.* ¶ 9.  Defendant Judge Bobby Hughey is alleged to be the final policymaker at the CCCJC.  *Id.* ¶ 276.  Defendant Daniel Kern served as Facility Director from March 2019 until his termination in approximately November 2019.  *Id.* ¶ 11.  Defendant NaCole Majors was the Human Resources Director for Canadian County.  *Id.* ¶ 12.  Defendant Melanie Johnson was hired as permanent Facility Director in July 2020 and remained in that position through the filing of the TAC.  *Id.* ¶¶ 13, 46.  Defendant Cedric Mills was the Assistant Facility Director for the CCCJC and, after Kern's termination, served as acting Facility Director until Johnson's hire.  *Id.* ¶¶ 14, 45.  Each individual defendant is sued in their individual and/or official capacities.  *Id.* ¶ 15.

---

[1] The Court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to [Plaintiff]."  *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014)).  The Court includes only those facts relevant to the Motions to Dismiss.

Plaintiffs allege that the CCCJC has a documented history of sexual discrimination and hostile work environment harassment predating the events at issue. *Id.* ¶¶ 24-25. In spring 2018, Moss was appointed Interim Facility Director. *Id.* ¶ 49. After Mills was hired into a newly created Co-Assistant Facility Director position in April 2018, Judge Hughey allegedly told Moss that she and Mills would have to "audition" for the Facility Director position. *Id.* ¶¶ 50, 52. In spring 2019, Hughey hired Kern as Facility Director instead. *Id.* ¶¶ 53, 58-59. Around the same time, the Board, Majors, and Judge Hughey made efforts to conceal Kern's prior employment at the Walnut Grove Correctional Facility, a juvenile facility shut down in part for staff sexual misconduct and inmate abuse. *Id.* ¶¶ 27-32.

During his eight-month tenure, Plaintiffs allege Kern routinely made sexually charged and inappropriate remarks, including about women employees' age, physical appearance, and sexuality. *Id.* ¶¶ 34-36. Kern also created unposted positions for younger women, denying Plaintiffs the opportunity to apply; made sexually inappropriate comments about children in the CCCJC's care, including sexualized remarks about a thirteen-year-old girl; and subjected Plaintiffs to a pervasive hostile work environment. *Id.* ¶¶ 34-37, 60-63, 76-77, 83-84, 99-100, 120-124, 130-132. Plaintiffs made formal complaints about Kern's conduct to Judge Hughey and the Board, which were not properly investigated or remediated. *Id.* ¶¶ 38, 57, 134. In the fall of 2019, Plaintiffs Moss, Wehmuller, and Hardaway reported Kern's conduct and the Board's failure to act to County Commissioner Marc Hader and to Channel 9 media, and Moss gave a News 9 interview detailing Kern's misconduct and the County's failure to act on information

reported by her and McClain. *Id.* ¶¶ 41, 125, 135. Shortly thereafter, Kern was terminated in November 2019. *Id.* ¶ 42.

Plaintiffs allege that after reporting Kern's conduct to Judge Hughey and the Board and speaking with the press, they were subjected to ongoing retaliation that ultimately resulted in adverse actions taken against them, including the termination or constructive discharge of each Plaintiff. *Id.* ¶ 43. The alleged retaliation included, among other things: Kern falsely accusing Moss of involvement with drugs entering the facility and directing employees not to contact her following her termination in October 2019, *id.* ¶¶ 68-73; Kern stripping McClain of access to employee personnel files after she contacted the EEOC, *id.* ¶¶ 87, 89; Mills assigning Barton an unreasonable workload designed to generate poor evaluations and controlling her hiring to prevent staffing assistance, *id.* ¶ 106; Johnson and Majors posting Barton's position while she was on FMLA leave, *id.* ¶ 108; Mills placing Hardaway in positions designed to cause him to fail, *id.* ¶ 137; Johnson and Judge Hughey blocking Hardaway from interviewing for the Principal position, *id.* ¶ 140; and Wehmuller being subjected to disparate timekeeping treatment, loss of privileges, obstruction of job duties, and drug testing, *id.* ¶ 126. Plaintiffs McClain and Barton were constructively discharged in 2021 after being offered only kitchen positions upon return from FMLA leave. *Id.* ¶¶ 95-96, 110-111. Wehmuller resigned in May 2021 and Hardaway was constructively discharged when his Dean of Students contract was not renewed. *Id.* ¶¶ 127, 141. Goodfellow was terminated on January 8, 2021, allegedly because Defendants believed she was gathering information on behalf of the other Plaintiffs in anticipation of

litigation. *Id.* ¶¶ 112, 118.  Fletcher was terminated on October 1, 2020, after commenting on the discriminatory treatment of another employee. *Id.* ¶ 154.

Plaintiffs allege that they filed various EEOC charges and received Notices of Rights to Sue, and provided notice of their state tort claims to Canadian County pursuant to the Oklahoma Governmental Tort Claims Act. *Id.* ¶¶ 16-20.  Plaintiffs assert claims for sex discrimination and hostile work environment under Title VII (Count I); age discrimination under the ADEA (Count II); religious discrimination under Title VII (Count III); disability discrimination under the ADA (Count IV) and OADA (Count V); retaliation under Title VII (Count VI), the ADA (Count VII), the OADA (Count VIII), and the FMLA (Count IX); violation of the Equal Pay Act (Count X); Monell liability under 42 U.S.C. § 1983 (Count XI); and Burk tort (Count XII) — all against the Board. Plaintiffs also assert First Amendment retaliation under 42 U.S.C. § 1983 against Defendants Hughey, Kern, Majors, Mills, and Johnson (the Individual Defendants) in their individual and/or official capacities (Count XIII); and violation of Article II, § 22 of the Oklahoma Constitution against those same defendants (Count XIV). *Id.* ¶¶ 156-318.

## II.    Pleading Standard

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678. "Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (internal quotation marks and citation omitted). And a complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

Further, regarding § 1983 claims, there is a "need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins*, 519 F.3d at 1250 (explaining that when plaintiff brings § 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom").

## III.    Analysis[2]

### A. Service by Plaintiff Fletcher

Defendants move to dismiss all claims asserted by Plaintiff Fletcher on the ground that Fletcher failed to timely serve Defendants and that his claims were therefore deemed dismissed under Oklahoma law. *See e.g.*, [Doc. No. 74] at 31; [Doc. No. 75] at 27. Although Fletcher contests this request, the material facts are not in dispute.

Fletcher filed his initial petition in the District Court of Canadian County along with the other Plaintiffs. [Doc. No. 1-3]. Under Oklahoma law, a plaintiff must serve

---

[2] Defendants urge the Court to dismiss the Third Amended Complaint in its entirety based on noncompliance with Rule 8(a)(2) of the Federal Rules of Civil Procedure. [Doc. No. 74] at 9; [Doc. No. 75] at 9. Specifically, Defendants take issue with the length and volume of the Third Amended Complaint. While the allegations are voluminous, they do not rise to noncompliance with Rule 8. The number of parties, nature of claims, and procedural history to date necessarily requires a large filing, and the Court declines to dismiss based on Rule 8.

defendants within 180 days of filing. *See* Okla. Stat. tit. 12, § 2004(I). Fletcher concedes that he failed to effect service within that period and contends his "claims were deemed dismissed on June 18, 2021, unless he can show good cause why it was not served." [Doc. No. 85] at 23. He further concedes he does not have good cause. *Id.*

When Plaintiffs filed their First Amended Complaint on July 12, 2021, Fletcher was not included. FAC [Doc. No. 1-8]. Plaintiffs subsequently moved to amend to add Plaintiff Hardaway, but that motion did not seek leave to add Fletcher, and the order granting the motion did not authorize his addition. [Doc. Nos. 1-18, 1-19]. Despite never seeking or obtaining leave of court, Fletcher was improperly included as a plaintiff in the Second Amended Complaint, which was filed in state court on January 26, 2022.[3] SAC [Doc. No. 1-23]. He likewise was included in the Third Amended Complaint. TAC [Doc. No. 72]. Defendants removed the action to this Court on February 14, 2022, and raised the service defect in their first motion to dismiss filed March 7, 2022. [Doc. No. 14] at 27. In the subsequent years, Fletcher has not attempted to correct or address the deficiency, and his Response briefs do not address his unauthorized re-entry into the action. *See* [Doc. Nos. 83, 85].

Instead, he contends that he subsequently revived his claims under Oklahoma's savings statute, which allows a plaintiff whose action fails for reasons other than on the merits to commence "a new action" within one year of the failure. Okla. Stat. tit. 12, § 100.

---

[3] "A motion to intervene under Rule 24 of the Federal Rules of Civil Procedure is the proper avenue by which a non-party should seek to join a pending proceeding." *See Serrano v. New Mexico*, No. 17-CV-01156-RB-SCY, 2018 WL 2723781, at *2 (D.N.M. June 6, 2018); *see also* Fed. R. Civ. P. 24. Further, amendments require leave of Court. Fed. R. Civ. P. 15(a)(2).

According to Fletcher, he satisfied this requirement when he was included as a plaintiff in the Second Amended Complaint filed in this action.  [Doc. No. 85] at 23.  However, he provides no authority to support this theory and while he acknowledges that some of his claims would be time-barred, *id.*, he offers no clarification as to which claims, seemingly wanting the Court to dig through the voluminous pleadings and conduct his research for him.  The Court declines to do so.  And again, he wholly sidesteps the issue of not obtaining leave of Court to be included in the Second Amended Complaint and cites no legal authority to support this proposition.  On the current record, the Court is not persuaded.

These fatal defects aside, his claims are independently subject to dismissal for failure to comply with Rule 4(m) following removal.  Under 28 U.S.C. § 1448 and binding Tenth Circuit precedent, removal triggered a new 90-day service period expiring May 15, 2022.  *Wallace v. Microsoft Corp.*, 596 F.3d 703, 707 (10th Cir. 2010).  Fletcher did not serve Defendants within that window and wholly ignores this argument as well.  *Putnam v. Morris*, 833 F.2d 903, 905 (10th Cir. 1987).  Further, he has been on notice of this deficiency for years since Defendants raised it in their first motion to dismiss and yet, he has not sought an extension or other relief from the Court.

A permissive extension is unwarranted.  Under *Espinoza v. United States*, 52 F.3d 838, 841–42 (10th Cir. 1995), the relevant factors—including Fletcher's complete failure to attempt service after explicit notice, the absence of any complexity or evasion justifying the delay, and the prejudice to Defendants from further delay in long-running litigation— all weigh against an extension.  Further, even where the statute of limitations would bar Plaintiff's refiled claims, that fact does not make dismissal inappropriate.  *See Despain v.*

*Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1439 (10th Cir. 1994) ("The fact that the statute of limitations has run, however, does not demonstrate good cause and does not make dismissal under Rule 4[(m)] inappropriate."). As the Tenth Circuit has observed, it is the plaintiff's "responsibility to monitor the progress of service and to take reasonable steps to assure that [defendants are] timely served." *May v. Oklahoma Dep't of Corr.*, 215 F.3d 1337 (10th Cir. 2000). Accordingly, Plaintiff Fletcher's claims are DISMISSED WITHOUT PREJUDICE for failure to timely serve Defendants. *See* Fed. R. Civ. P. 4(m); 12(b)(5).[4]

## B. State Constitution Claim

All Plaintiffs except Goodfellow assert a claim for violation of Article II, § 22 of the Oklahoma Constitution against Defendants Hughey, Kern, Majors, Mills, and Johnson. Plaintiffs allege that the Individual Defendants violated their state constitutional rights of free speech. TAC ¶¶ 315–318. Defendants argue that this claim must be dismissed because Article II, § 22 does not provide a private right of action. *See* [Doc. No. 75] at 25; [Doc. No. 77] at 31. Indeed, the Tenth Circuit affirmed dismissal of a standalone § 22 claim, holding that its language "does not include a remedies provision or a standard of care, which points away from any private right of action." *See Tufaro v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 107 F.4th 1121, 1134 (10th Cir. 2024). The *Tufaro* Court

---

[4] Because the Court dismisses Plaintiff Fletcher's claims for failure to timely effect service, the Court does not consider Defendants' Rule 12(b)(6) arguments regarding Fletcher's claims asserted in Counts I, III, XI, XII, XIII, and XIV. Thus, for clarity and efficiency, any reference hereafter to "Plaintiffs" in the context of claims analysis refers to the remaining Plaintiffs Moss, McClain, Barton, Wehmuller, and Hardaway for purposes of the remaining Order.

further cautioned against recognizing new private causes of action based on separation of powers and other concerns. *Id.* Plaintiffs do not cite or distinguish *Tufaro*, nor do they provide any basis "to overcome the strong cautionary language against recognizing new private causes of action." *Id.* Accordingly, Count XIV is dismissed without prejudice.

### C. First Amendment Retaliation

All Plaintiffs except Goodfellow assert a § 1983 claim for First Amendment Retaliation against the Individual Defendants (Count XIII). Plaintiffs McClain and Barton assert the same claim against the Board under a theory of municipal liability (Count XII). All Defendants move to dismiss the claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Notably, the Third Amended Complaint is not entirely clear as to whether the claims against the Individual Defendants are asserted against them in their official capacities. *See* TAC ¶ 15 (naming Individual Defendants in their "individual and/or official capacities"). Nevertheless, the Individual Defendants move for dismissal.

#### 1. *Official Capacity Claims*

It is well-established that "an official-capacity suit is . . . to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Further, "[a] suit brought against a county's board of county commissioners is the way Oklahoma law contemplates suing the county." *Snow v. Bd. of Cnty. Comm'rs of the Cnty. of McClain*, No. CIV-14-911-HE, 2014 WL 7335319, at *2 (W.D. Okla. Dec. 19, 2014) (citing Okla. Stat. tit. 19, § 4). And "in the § 1983 context, a suit against the board of county commissioners or some other county official in their official capacity is, in substance, a suit against the county." *Id.* (citing *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010)).

10

Defendants Majors, Mills, and Johnson move for dismissal of the official capacity claims, and Plaintiffs did not respond to this argument in their brief. *See generally* [Doc. No. 85]. Dismissal is warranted on that basis alone. [5] As to Defendant Kern, he did not specifically move for dismissal of the official capacity claim, but the Court nevertheless finds dismissal is proper because the official capacity claims against Defendant Kern (and Majors, Mills, and Johnson) are duplicative and redundant of the § 1983 claim against the Board. *See Theron v. Canadian Cnty. ex rel. Bd. of Cnty. Comm'rs*, No. CIV-23-1176-G, 2024 WL 4314899, at *2 (W.D. Okla. Sept. 26, 2024) (dismissing official capacity § 1983 claim against same defendants as redundant of claims against the Board); *Duran v. City & Cnty. of Denver*, No. 10-CV-01569-REB-KMT, 2012 WL 4476652, at *4 (D. Colo. Sept. 28, 2012) (dismissing duplicative official capacity claims sua sponte).

Defendant Judge Hughey also moves to dismiss all official capacity claims against him on two grounds. First, he argues that to the extent the official capacity is that of a county actor, the claims are duplicative of the claims asserted against the Board. [Doc. No. 76] at 17. Second, he argues that to the extent the official capacity is that of a state actor, the claim fails because a § 1983 claim may only be brought against a person, and neither states nor state officials sued in their official capacities are "persons" within the meaning

---

[5] Where a party fails to address a discrete argument raised in a motion to dismiss, the Court may treat the omitted issue or theory as abandoned. *See C1.G ex rel. C.G. v. Siegfried*, 38 F.4th 1270, 1282 (10th Cir. 2022) (affirming district court's conclusion that plaintiff abandoned facial constitutional claim "by not addressing it in his response to [d]efendants' motion to dismiss"); *see also Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053–54 (7th Cir. 2019) (explaining that a complaint "can be subject to dismissal if a plaintiff does not provide argument in support of the legal adequacy of the complaint," such as "when a party fails to develop arguments related to a discrete issue or when a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss").

of § 1983.  *Id.*  Plaintiffs respond that the state-versus-county-actor question requires discovery and that retaining Judge Hughey in his official capacity is not duplicative because the state and juvenile bureau are entities distinct from the County.  Neither argument is persuasive.

As to the state-actor claims, Judge Goodwin considered the same arguments asserted against this same defendant in a related case and held that the plaintiffs could not pursue a § 1983 claim against Defendant Judge Hughey as a state official because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Theron*, 2024 WL 4314899, at *2 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).  The Court agrees.  Oklahoma district judges are arms of the state entitled to Eleventh Amendment immunity from official-capacity damages claims.  *See Arndt v. Hatfield*, No. CV-20-181-R, 2020 WL 4905549, at *4 (W.D. Okla. Aug. 20, 2020) (dismissing official-capacity damages claims against Defendant Judge Hughey specifically on the basis of Eleventh Amendment immunity).  Any claims against Judge Hughey in an official capacity as a state actor are dismissed.

As to the county-actor claims, Judge Hughey argues that these claims are duplicative and redundant to the identical claims asserted against the Board.  The Court agrees.  *See Stuart v. Jackson*, 24 F. App'x 943, 956 (10th Cir. 2001) ("[A] section 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." (citation omitted)); *see also Theron*, 2024 WL 4314899, at *2 (dismissing official-capacity claims against Defendant Judge Hughey on this basis).

Although Plaintiffs engage in a lengthy argument that Judge Hughey's role and the circumstances here are "unique," Plaintiffs' cited authorities do not compel a different result. For example, in *Martinez v. Sellers*, the Court dismissed claims against a Board as duplicative of claims against a sheriff, declining to dismiss only one count where the Board, not the sheriff, was a signatory to the Law Enforcement Agreement at issue, creating a claim uniquely attributable to the Board. *Martinez v. Deputy Skyler Sellers*, No. CIV-23-102-RAW-GLJ, 2024 WL 3569181, at *2 (E.D. Okla. July 29, 2024). No comparable circumstances exist here. Plaintiffs' remaining authorities address which county entity qualifies as the employer or final policymaker of a juvenile bureau employee. [6] Notably, these decisions all address motions to dismiss brought by a Board of County Commissioners disputing its own employment status. [7] Here, the Board does not dispute employer liability or argue that the claims against it are duplicative of those asserted against Defendant Judge Hughey in his official capacity.

Further distinguishing these cases, Plaintiffs make clear that they do not assert there are multiple employers. [Doc. No. 91] at 19. Rather, they argue that "the employer is not

---

[6] *Dixon v. Bd. of Cnty. Comm'rs of the Cnty. of Oklahoma*, No. CIV-15-196-R, 2016 WL 5017332 (W.D. Okla. Sept. 19, 2016); *Bale v. Bd. of Cnty. Comm'rs*, No. 15-CV-0577-CVE-PJC, 2016 WL 3461292 (N.D. Okla. June 21, 2016), and *McClellan v. Bd. of Cnty. Comm'rs of Tulsa Cnty.*, No. 07-CV-36-TCK-FHM, 2010 WL 4636328 (N.D. Okla. Nov. 5, 2010).

[7] As noted by one court: "*McClellan* is consistent with the rulings of other federal district courts located in Oklahoma where a county board of commissioners asserted that it should not be held liable as the joint employer of a former employee of a juvenile bureau, and courts have rejected arguments that a board of county commissioners cannot be treated as the employer of a juvenile bureau's former employee as a matter of law." *Bale*, 2016 WL 3461292, at *3 (citing *Dixon v. Bd. of Cnty. Comm'rs of Cnty. of Oklahoma*, No. CIV-15-196-R, 2015 WL 5839364, at *3 (W.D. Okla. Oct. 7, 2015); *Reynolds v. Bd. of Cnty. Comm'rs of the Cnty. of Oklahoma*, No. CIV-14-0250-HE, 2014 WL 6455508, at *2 (W.D. Okla. Nov. 13, 2014)).

who is in control" and that "for all intents and purposes, Judge Hughey is the CCCJC/CJB." *Id.* at 20. They further assert that "Judge Hughey . . . is effectively the Director of the CJB." For these reasons, say Plaintiffs, the Court should decline to dismiss the official capacity claim until discovery can disentangle the relationships. Even if the Court were to take Plaintiffs' conclusory statements about Judge Hughey's role as true, Plaintiffs do not sufficiently explain why the claims against Judge Hughey are not duplicative of those against the undisputed employer—the Board. *See Reynolds v. Bd. of Cnty. Comm'rs of the Cnty. of Oklahoma*, No. CIV-14-0250-HE, 2014 WL 6455508, at *2 (W.D. Okla. Nov. 13, 2014) ("While the director of the juvenile bureau or judge of the juvenile division, *see* Okla. Stat. tit. 10A, § 2-4-102, rather than the county commissioners, may have the power to determine the pertinent policy for the county in these circumstances, that does not mean that the county cannot be held accountable for their actions."). Moreover, Plaintiffs set forth no binding authority that a juvenile bureau has capacity to be sued in its own name, and district courts analyzing the issue appear to be split. *Compare McClellan v. Bd. of Cnty. Comm'rs of Tulsa Cnty.*, 261 F.R.D. 595, 603 (N.D. Okla. 2009) ("As an issue of first impression, the Court holds that juvenile bureaus created by Oklahoma law have capacity to sue and be sued for purposes of Federal Rule of Civil Procedure 17(b)(3).") *with Reynolds*, 2014 WL 6455508, at *1 ("The Board has not, though, been sued in this case because of any particular act the commissioners took or failed to take, but because the Juvenile Bureau is a county entity or agency that lacks the capacity to be sued in its own name.").

14

Plaintiffs notably do not cite to *Reynolds* anywhere in their brief.  [Doc. No. 91].
And even if they had, Plaintiffs offer no authority to suggest that the District Judge would
be the properly named party rather than the juvenile board.  *Cf. Bale*, 2016 WL 3461292,
at *2 (dismissing judicial district as a party despite plaintiff's claim that its chief judge
exercised administrative oversight of the juvenile bureau).  The official capacity claims
against Defendant Judge Hughey are dismissed without prejudice.

### 2.  *Individual Capacity Claims*

A § 1983 defendant sued in an individual capacity may be subject to personal
liability and/or supervisory liability.  *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir.
2011).  Personal liability requires personal involvement in the alleged constitutional
violation.  *Id.*  Supervisory liability requires an "affirmative link" between the supervisor
and the constitutional violation; specifically, that the defendant promulgated, created,
implemented, or possessed responsibility for the continued operation of a policy that
caused the constitutional harm, and acted with the state of mind required to establish the
alleged constitutional deprivation.  *George ex rel. Bradshaw v. Beaver Cnty.*, 32 F.4th
1246, 1255 (10th Cir. 2022); *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

### i.    Assembly, Association, and Religion

All Plaintiffs except Plaintiff Goodfellow assert a claim for First Amendment
retaliation against the Individual Defendants stemming from one or more of their "First
Amendment rights of speech, assembly, association, and religion."  TAC ¶¶ 296, 298, 301,
304, 307, 310.  Accordingly, the Individual Defendants moved to dismiss each of these
discrete theories.  *See e.g.*, [Doc. No. 75] at 15-23.  In Response, Plaintiffs defend this

claim as a free-speech retaliation claim, arguing that their speech was not made pursuant to official duties, that their speech involved matters of public concern, and that such speech prompted adverse action. *See* [Doc. No. 84] at 7–15; [Doc. No. 91] at 21–27; [Doc. No. 85] at 9–13. Plaintiffs did not meaningfully respond to Defendants' arguments as to the distinct theories of assembly, association, and religion/free exercise, nor did they identify authority showing those theories are plausibly stated against each individual defendant. Similarly, they did not address these theories in response to Defendants' arguments for qualified immunity, resulting in a failure to meet their burden to overcome the qualified immunity defense.[8]

Accordingly, to the extent Count XIII rests on theories of assembly, association, or religion/free exercise distinct from Plaintiffs' free-speech retaliation theory, the Court concludes those theories have been abandoned by Plaintiffs' failure to respond to Defendants' dismissal arguments. *C1.G ex rel. C.G. v. Siegfried*, 38 F.4th 1270, 1282 (10th Cir. 2022). Because Plaintiff Barton does not assert a free-speech retaliation theory, her claim in Count XIII is dismissed without prejudice. The Court therefore confines its remaining analysis of Count XIII to whether the Third Amended Complaint plausibly states a First Amendment free-speech retaliation claim by Plaintiffs Moss, McClain, Wehmuller, and Hardaway.

---

[8] "When a § 1983 defendant raises qualified immunity, as the employees did in their motion for judgment on the pleadings, the burden shifts to the plaintiff to establish both prongs of the defense." *Hunt v. Montano*, 39 F.4th 1270, 1284 (10th Cir. 2022) (citing *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015)).

### ii.    Free Speech

The parties dispute which framework is appropriate for analyzing Plaintiffs' free speech retaliation claims. The Tenth Circuit applies one of two tests depending on the relationship between the plaintiff and the defendant. The *Garcetti/Pickering* test (urged by Defendant Kern) is used for protected speech retaliation claims in the public employee context and applies five elements: "(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct." *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014) (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Pickering v. Bd. of Educ.,* 391 U.S. 563 (1968)).[9] "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Trant*, 754 F.3d at 1165. Further, the Tenth Circuit has explained that analyzing the third element, often called *Pickering*

---

[9] Defendants Majors, Mills, and Johnson argue that the *Worrell* test, which is applicable to claims against non-employers, applies to the claims against them as they were not Plaintiffs' "employer." *See Trant*, 754 F.3d at 1169 (applying the *Garcetti/Pickering* test to the claim against a board defendant and the *Worrell* test to claims against individual defendants); *see also Muhammad v. Hall*, 674 F. App'x 810, 812 (10th Cir. 2017). However, the Tenth Circuit has recently applied the *Garcetti*/*Pickering* test to claims against individuals holding supervisory roles. *See Pfannenstiel v. Kansas*, No. 23-3145, 2024 WL 3534142, at *10 (10th Cir. July 25, 2024).

balancing, "is usually inappropriate—if not impossible—at the motion to dismiss stage." *Brown v. City of Tulsa*, 124 F.4th 1251, 1269 (10th Cir. 2025).

The *Worrell* test (urged by Defendants Majors, Mills, Johnson, and Hughey) applies when the claim is asserted against a defendant who is not the plaintiff's employer and there is no contractual relationship between them. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). Under the *Worrell* test, a plaintiff must show: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Id.* While the motivation factor is framed slightly differently between the two tests, the Tenth Circuit has confirmed "there is no meaningful difference in the quantum of motivation required to prove causation in the two frameworks." *Hedquist v. Beamer*, 763 F. App'x 705, 712 (10th Cir. 2019).

Plaintiffs' briefing is inconsistent on the applicable framework. In response to Defendant Kern's motion, Plaintiffs appear to apply the *Garcetti/Pickering* test (but do not directly cite it or its elements), organizing their argument around official duties, public concern, and adverse employment actions. *See* [Doc. No. 84]. In response to the motion filed by Defendants Majors, Mills, and Johnson, however, Plaintiffs cite neither *Pickering* nor *Worrell* and instead appear to rely on a supervisory liability framework applicable to some § 1983 claims. *See* [Doc. No. 85]. Plaintiffs appear to draw that framework from a footnote in a related case analyzing similar claims against some of the same Individual

18

Defendants.  *Theron*, 2024 WL 4314899, at *3.  However, the *Theron* court merely explained it used *Garcetti/Pickering* because the factual allegations in the complaint reflected that the defendants had supervisory authority over the plaintiffs.

Indeed, the Tenth Circuit has explained that in determining which framework applies to a particular defendant, "'the relevant inquiry" is 'the extent to which [the defendant] had authority over [the plaintiff's] employment situation.'" *Hedquist*, 763 F. App'x at 712 (quoting *Leverington v. City of Colorado Springs*, 643 F.3d 719, 730 n.8 (10th Cir. 2011)).  Unlike in *Theron*, the TAC here does not contain sufficient allegations for the Court to determine the level of supervisory authority that each Individual Defendant had over each Plaintiff.[10]  Accordingly, for purposes of this Motion, the Court applies the *Worrell* test.[11]

**Protected Speech.**  Plaintiffs Moss, McClain, Wehmuller, and Hardaway allege they engaged in protected speech by making complaints to the media and/or internally about sexual harassment by Kern and the environment at CCCJC.  *See* TAC ¶¶ 61, 64-66 (Moss reported Kern's pattern of sexually inappropriate remarks directed at women employees, including Moss, to Hughey on September 26, 2019, and to Commissioner Anderson on October 9, 2019); ¶¶ 76-77, 81, 86 (McClain reported Kern's pattern of

---

[10] Confusing matters further, the Court presumes that the level of supervisory authority by one defendant over one plaintiff could ostensibly change over a given time period if, for example, certain parties are promoted or demoted.  The TAC does not attribute dates to each alleged adverse action or event of retaliation.

[11] This decision does not prevent the parties from re-urging the *Garcetti/Pickering* test at summary judgment after appropriate factual development as to this issue of authority.

sexually inappropriate remarks directed at women employees, including McClain, to Hughey, and separately contacted the EEOC on October 15, 2019); ¶¶ 120, 125 (Wehmuller observed Kern engaging in sexually offensive conduct including remarks concerning children enrolled at CCCJC, and joined Moss and McClain in drafting complaints to Hughey, reported the conduct to County Commissioner Hader, and spoke with the news); ¶¶ 130-133, 135 (Hardaway witnessed Kern making sexualized comments about a 13-year-old girl in CCCJC's care, submitted a written statement to Hughey, and disclosed the conduct to the media in October 2019).

Reporting sexual harassment and misconduct affecting co-workers and children in a public institution's care, rather than merely addressing only personal grievances, to supervisors and outside parties including the media constitutes protected speech on a matter of public concern. *See Duda v. Elder*, 7 F.4th 899, 919 (10th Cir. 2021) (holding *Wulf* clearly established that speech is protected where it "concerned a 'broader public purpose' about misconduct within the department rather than 'personal grievances,'" was made to a local reporter, and "concerned a wide range of alleged misconduct . . . including sexual harassment"); *Wulf v. City of Wichita*, 883 F.2d 842, 857–60 (10th Cir. 1989) (affirming First Amendment protection for public employee's report of sexual harassment of a co-worker and other institutional misconduct to outside authorities, finding "[a]llegations of sexual harassment have been found to involve matters of public concern"); *Lane v. Franks*, 573 U.S. 228, 241 (2014) (Speech involves matters of public concern when it "is a subject of legitimate news interest."); *but see Woodward v. City of Worland*, 977 F.2d 1392, 1403–04 (10th Cir. 1992) (drawing the distinction between unprotected speech addressed solely

to the plaintiff's personal harassment and protected speech that "had a broader public purpose" concerning misconduct affecting others).  Thus, as to allegations that Plaintiffs made reports about sexual harassment and misconduct affecting co-workers and children, Plaintiffs have plausibly pleaded they engaged in protected speech.[12]

The Court notes that not all of the alleged speech in the TAC would be deemed "protected speech" for purposes of a free speech retaliation claim.  For example, Plaintiff McClain alleges she "contacted the EEOC regarding filing a charge against the Board, Judge Hughey, Kern, and others."  TAC ¶¶ 87–89.  However, these allegations cannot sustain a free speech retaliation claim because filing an EEOC charge does not constitute speech on a matter of public concern unless the charge raises systemic discrimination extending beyond the individual filer, much less only *contacting* the EEOC.[13]  *See Grabow v. Indep. Sch. Dist. No. I-008*, 86 F.3d 1166, at *4 (10th Cir. 1996) ("Plaintiff cannot establish a First Amendment claim for retaliation based on filing an EEOC charge."); *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1356 (10th Cir. 1996); *Salemi v. Colorado Pub. Employees' Ret. Ass'n*, 747 F. App'x 675, 699 (10th Cir. 2018).  The TAC alleges only that McClain "contacted the EEOC" without any allegation regarding the nature or content of the communication (i.e. whether she was complaining of a personal grievance

---

[12] Even if the Court were to apply the *Garcetti/Pickering* test, the first two elements appear to be satisfied for the same reasons.  *See Lane v. Franks*, 573 U.S. 228, 241 (2014) (Speech involves matters of public concern when it "is a subject of legitimate news interest."); *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014) ("Statements revealing official impropriety usually involve matters of public concern."); *Thomas v. City of Blanchard*, 548 F.3d 1317, 1325 (10th Cir. 2008) (reporting wrongdoing to an external source ceased to be speech merely pursuant to official duties and "became the speech of a concerned citizen").

[13] McClain did not file her first EEOC charge until March 2020.  *See* [Doc. No. 72-1; 72-5].

or conduct affecting others).  *See* TAC ¶ 86.  Thus, this specific instance was not protected speech for purposes of a First Amendment retaliation claim.

**Adverse Action and Motivation.**  Defendants Majors, Mills, and Johnson argue that Plaintiffs have not alleged adverse employment actions or retaliatory motive by these defendants.  [Doc. No. 75] at 18–19.  In their Response, Plaintiffs only offer speculation (without pointing to any pleaded allegations) as to these Defendants' motives.  *See* [Doc. No. 85] at 7 ("Whether it was done at the direction of Hughey, Mills, or out of her own spiteful behavior, Johnson carried out the mission to rid the center of all employees who complained about Kern or Hughey."); *id.* ("Mills resented Moss and never missed an opportunity to harass or intimidate her . . . When Mills was unable to successfully get rid of Moss through his harassment and intimidation, he joined forces with Kern to set Moss up to be fired."); *id.* at 8 ("Either the Board completely failed to supervise and train their HR Manager or Majors too chose to carry out the mission of Hughey, Kern, Mills, and Johnson by engaging in a pattern of retaliatory behavior.").[14]

The speculative nature of these statements does not satisfy the pleading standards for alleging a retaliatory motive for taking adverse action.  *See McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1141–42 (10th Cir. 2024) ("While we do not mandate the pleading of any specific facts in particular, a plaintiff must include enough context and detail to link the allegedly adverse employment action to a discriminatory or retaliatory

---

[14] Notably, the Tenth Circuit has not recognized a "reverse cat's paw" theory where an allegedly retaliating superior acts through a subordinate.  *Muhammad*, 674 F. App'x at 813 ("This court has not yet decided whether a subordinate employee can be liable for First Amendment retaliation when he or she merely acts at the direction of a superior who desires to retaliate.").

motive with something besides sheer speculation." (internal quotations and citations omitted)); *Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005).  Further, the Court may only consider allegations pleaded in the four corners of the complaint and not allegations made for the first time in a response to a motion to dismiss.  *Brown v. City of Tulsa*, 124 F.4th 1251, 1270 (10th Cir. 2025).  The TAC fails to plausibly link that each of these three Defendants took specific adverse action against each of Plaintiffs Moss, McClain, Wehmuller, and Hardaway because they engaged in protected speech.[15]

Defendant Kern argues the claims against him should be dismissed because Plaintiffs do not assert that Kern took any adverse employment action against them in response to their speech.  [Doc. No. 77] at 25–29.  Upon review of the TAC, the Court finds that Plaintiff Moss plausibly alleges facts that support an inference that Defendant Kern retaliated against her for her complaints regarding his conduct.  She pleads that within two months of complaining to Defendant Judge Hughey and Commissioner Anderson, she had been terminated and banned from the premises.  *See Dixon v. Bd. of Cnty. Comm'rs of the Cnty. of Oklahoma*, No. CIV-15-196-R, 2016 WL 5017332, at *3 (W.D. Okla. Sept. 19, 2016) ("[T]he director of the juvenile bureau has the authority to hire and fire

---

[15] Additionally, many of the adverse actions Plaintiffs point to in their briefing are duplicative and non-specific as to each plaintiff.  For example, Plaintiffs' Response argues that all three of Defendants Majors, Mills, and Johnson terminated Goodfellow because she served as a witness in EEOC proceedings.  Setting aside that Goodfellow does not bring a First Amendment claim, it is simply nonsensical to assume that *each* of these defendants were equally responsible for the final decision to terminate Goodfellow.  Thus, the allegations are collective and do not satisfy standards for pleading a § 1983 claim.  *Pahls*, 718 F.3d at 1225.

counselors and other employees and manages the day-to-day affairs of the bureau."). Moss's free-speech retaliation claim against Kern survives.

As to Plaintiff McClain, her most specific allegation against Kern alleges that he stripped her of personnel file access days after she "contacted the EEOC regarding filing a charge against the Board, Judge Hughey, Kern, and others." TAC ¶¶ 87–89. As previously discussed, these allegations as currently stated do not constitute protected speech. *See supra.* The remaining specific adverse actions attributable to Kern regarding McClain do not appear causally connected to McClain engaging in protected speech. *See* TAC ¶¶ 78, 90. Therefore, McClain has not stated a First Amendment retaliation claim against Kern.

Plaintiffs Wehmuller and Hardaway's free speech retaliation claim against Kern likewise fails because the TAC attributes the alleged adverse actions collectively to multiple defendants without specifying which defendant took which action. TAC ¶¶ 308, 311; *see Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007) ("[A] complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated."); *Robbins*, 519 F.3d at 1250. Accordingly, Wehmuller and Hardaway's free speech retaliation claims against Defendant Kern are dismissed.

The same pleading defects exist as to Defendant Judge Hughey. While there are numerous allegations that reference Defendant Judge Hughey, most of them vaguely reference "retaliatory conduct" by multiple Individual Defendants without specifying the particular actions or who the action is attributable to. *See id.* Plaintiff Hardaway does

24

allege a somewhat specific allegation that Judge Hughey "ultimately approved" a decision by Defendant Johnson to not allow him to interview for a principal position in 2021 in retaliation for him speaking to the media in October 2019.[16]  TAC ¶¶ 135–140.  However, this allegation standing alone is too conclusory to support a reasonable inference that cause can be attributed to Defendant Judge Hughey or that such decision was in retaliation for Hardaway's protected speech.

Similarly, Plaintiffs' bare allegation that Defendant Judge Hughey is the "final policymaker" does not allow a reasonable inference that he was personally involved in any termination or adverse employment decisions against Plaintiffs for exercising their free speech rights.  TAC ¶ 276; *see Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767–68 (10th Cir. 2013).  "Rather, these factual assertions plausibly show that Defendant Judge Hughey provided higher-level oversight of the CCCJC, including supervision of the CCCJC Director[.]." *Theron v. Canadian Cnty. ex rel. Bd. of Cnty. Comm'rs*, No. CIV-23-1176-G, 2024 WL 4332800, at *3 (W.D. Okla. Sept. 26, 2024).  Accordingly, Plaintiffs have failed to state a claim against Defendant Judge Hughey.

In summary, only Plaintiff Moss has plausibly stated a free speech retaliation claim against Defendant Kern.  Plaintiffs McClain, Wehmuller, Hardaway, and Barton failed to

---

[16] As to Defendant Johnson, even construing the allegations in the light most favorable to Plaintiffs, there is no allegation as to why Defendant Johnson—an individual newly hired at CCCJC—would be motivated to "continue" retaliatory conduct against any of the plaintiffs for reports made months or years earlier about her predecessor. *See Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005) (citations omitted) ("Adverse action in close proximity to protected speech may warrant an inference of retaliatory motive . . . [b]ut temporal proximity is insufficient, without more, to establish such speech as a substantial motivating factor in an adverse employment decision.").

sufficiently plead a § 1983 claim against Defendants Majors, Mills, Johnson, Kern, and Hughey and therefore, these defendants are also entitled to qualified immunity as to these plaintiffs. *Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2018). As to Plaintiff Moss's surviving claim against Defendant Kern, the right was clearly established at the relevant time, and Kern is not entitled to qualified immunity at this stage.[17] *See supra*; *McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir. 2005) ("[The defendant] violated clearly established law, and thus is not entitled to qualified immunity, if he terminated [the plaintiff] for exercising her free speech rights."); *Wulf*, 883 F.2d at 857–60.

### 3. *Municipal Liability*

Plaintiffs McClain, Barton, and Fletcher assert a claim for First Amendment retaliation against the Board under a municipal liability theory pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). However, the absence of a constitutional violation of these Plaintiffs by the Individual Defendants precludes a finding of liability against the Board. *See Muskrat v. Deer Creek Pub. Schs.*, 715 F.3d 775, 788 (10th Cir. 2013); *Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1150 (10th Cir. 2020). Although the Court found above that Plaintiff Moss has sufficiently alleged a First

---

[17] This finding "does not foreclose Defendants from reasserting their entitlement to qualified immunity on a motion for summary judg[]ment should [Plaintiffs'] allegations in the complaint prove to be unfounded." *Seamons v. Snow*, 84 F.3d 1226, 1238 (10th Cir. 1996). Moreover, the Tenth Circuit has cautioned against applying qualified immunity at the motion to dismiss for a First Amendment retaliation claim in the public employment context. *Brown v. City of Tulsa*, 124 F.4th 1251, 1269 (10th Cir. 2025) ("Practically speaking, the plaintiff will not know what interest the government will assert, how it will assert it, or what disruption the government claims the speech caused, making it impossible for the plaintiff to (1) allege facts sufficient to show that the defendant 'plausibly violated their constitutional rights,' and (2) identify a materially similar case where the employee prevailed to demonstrate that their First Amendment right was clearly established.").

Amendment retaliation claim against Defendant Kern, Moss does not assert a municipal liability claim against the Board. *See* TAC ¶¶ 274–281. Accordingly, Count XI is dismissed without prejudice.

### D. Title VII

Title VII prohibits an employer from discriminating against an individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's . . . race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To state a plausible discrimination claim, a plaintiff need not establish a *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), but the elements of that burden-shifting framework are helpful in assessing plausibility. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510–12 (2002); *Khalik v. United Air Lines*, 671 F.3d 1188, 1192–93 (10th Cir. 2012). Those elements include (1) membership in a protected class, (2) an adverse employment action, and (3) circumstances giving rise to an inference of discrimination. *See Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 & n.1 (10th Cir. 2015).

### 1. Gender Discrimination

In Count I, Plaintiffs Moss, McClain, Barton, Wehmuller, and Goodfellow allege they were discriminated against and received disparate treatment on the basis of sex/gender in violation of Title VII. The first element is undisputed by the parties: all five plaintiffs are women. The dispositive questions are whether the Third Amended Complaint plausibly alleges adverse employment actions and, critically, whether it plausibly connects those

actions to sex-based discrimination rather than to the numerous other causes the Third Amended Complaint itself identifies.

Plaintiff Moss pleads a plausible disparate treatment claim. The Third Amended Complaint alleges that Moss, who had served as Interim Facility Director and was Co-Assistant Facility Director, was passed over for promotion to Facility Director in favor of Defendant Kern, a male whom she alleges was less qualified. TAC ¶¶ 49, 159–160. Accordingly, Moss alleges that this constitutes disparate treatment on the basis of sex in violation of Title VII. The Board's response—that Kern had experience as a deputy warden at a juvenile correctional facility—goes to the merits of the claim, not its plausibility. At this stage, the Court accepts the allegation of relative qualifications as true. Whether Kern was in fact better qualified is a factual dispute not resolvable on a motion to dismiss. Moss's gender discrimination claim is therefore sufficient to survive dismissal.

The remaining four plaintiffs urge a disparate treatment claim based on a sex stereotyping theory derived from *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020), and *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), arguing that Kern's practice of favoring younger, more conventionally attractive women constitutes sex discrimination.[18] [Doc. No. 83] at 15–16. The Court is not persuaded. *Price Waterhouse* protects employees

---

[18] Plaintiffs' Response cites to Paragraphs 34–38 of the Third Amended Complaint to demonstrate they sufficiently plead this theory. [Doc. No. 83] at 15. However, standing alone and as it relates to a disparate treatment theory, these paragraphs are vague and conclusory. For example, Paragraph 35 states only that "Kern favored and gave special treatment to younger women, and often made crude comments regarding . . . women over the age of 40, including some of the Plaintiffs." TAC ¶ 35. The allegations do not specify which Plaintiffs this refers to, nor do they demonstrate that Kern took adverse employment action against any Plaintiff because of her perceived attractiveness.

penalized for failing to conform to gender role expectations. *Bostock* extended that logic to sexual orientation and transgender status. The unifying principle of both decisions is that a Title VII violation occurs when "changing the employee's sex would have yielded a different choice by the employer." *Bostock*, 590 U.S. at 659–660. Plaintiffs' allegations are more appropriately characterized as describing discrimination within a single sex based on age and appearance. There is no allegation that a similarly situated older or less attractive male employee would have been treated better. Without that comparative foundation, the theory describes appearance-based and age-based favoritism, neither of which Title VII reaches. *See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 290 (2d Cir. 1998) ("[T]his Court has upheld the dismissal of a Title VII complaint for failure to state a claim where a female employee alleged gender discrimination on the basis that the promotions she sought were given to more attractive women, but did not allege that men were not also subject to attractiveness criteria in determining promotions and did not allege that she had ever been in competition with a male.").

Plaintiffs cite to *Dothard v. Rawlinson*, 433 U.S. 321 (1977), and *Smith v. Avanti*, 249 F. Supp. 3d 1194 (D. Colo. 2017), in support of their theory that an employer violates Title VII if preferential treatment is given to more attractive employees. However, these cases are inapposite. *Dothard* is a disparate impact case, not a sex stereotyping or disparate treatment case, in which the Supreme Court invalidated facially neutral height and weight requirements that statistically excluded over forty percent of the national female population from employment. *See Carpenter v. Boeing Co.*, 456 F.3d 1183, 1187 (10th Cir. 2006) (distinguishing disparate impact claims, which challenge employment practices "fair in

29

form, but discriminatory in operation," from disparate treatment claims requiring a showing that an employer treated individuals less favorably because of a protected characteristic). *Smith* is a Fair Housing Act decision applying Colorado state law, not Title VII, and its sex stereotyping analysis addressed discrimination against a transgender individual and a same-sex couple based on norms concerning gender identity and sexual orientation. *See Smith*, 249 F. Supp. 3d at 1200–01.

Thus, there are insufficient allegations from which a reasonable fact finder could plausibly infer that "but for" the Plaintiffs' gender, they would not have faced the alleged adverse actions. "Simply saying 'I was discriminated against' does not give rise to an inference of discrimination." *Keenan-Coniglio v. Cumbres & Toltec Scenic Operating Comm'n*, 769 F. Supp. 3d 1216, 1236 (D.N.M. 2025). To the extent Plaintiffs McClain, Barton, Wehmuller, and Goodfellow assert Count I on a disparate treatment theory, that claim is dismissed without prejudice.

### 2. *Hostile Work Environment*

Count I also asserts a hostile work environment theory based on sex by Plaintiffs Moss, McClain, Barton, Wehmuller, and Goodfellow. A plaintiff can state "a claim of sex discrimination based on a hostile work environment" if she can "show (1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Morris v. City of Colorado Springs*, 666 F.3d 654, 663 (10th Cir. 2012) (citation omitted). A plaintiff must "plead sufficient facts to show that the work environment 'is permeated with discriminatory intimidation, ridicule,

and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 520 (10th Cir. 2017) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Additionally, a "plaintiff must allege facts showing that the work environment is both subjectively *and* objectively hostile or abusive under this standard." *Id.* (internal quotations and citation omitted). "To meet the objective portion of this test, the alleged harassment must be of the character that it would be deemed hostile by a reasonable employee under the same or similar circumstances." *Id.* Courts "consider the totality of the circumstances in determining whether a work environment is hostile or abusive, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23). However, "the Tenth Circuit has cautioned that, given the fact-intensive nature of the inquiry, '[t]he severity and pervasiveness evaluation is particularly unsuited [even] for summary judgment.'" *Ballage v. Hope & Home*, No. 21-CV-01320-PAB-KMT, 2022 WL 3716519, at *7 (D. Colo. Aug. 29, 2022), *report and recommendation adopted,* No. 21-CV-01320-PAB-MDB, 2022 WL 4290471 (D. Colo. Sept. 16, 2022) (quoting *Sanderson v. Wyom. Hwy. Patrol*, 976 F.3d 1164, 1177 (10th Cir. 2020)).

The Court is mindful that Title VII does not establish a general civility code for the workplace. *Morris v. City of Colorado Springs*, 666 F.3d 654, 663 (10th Cir. 2012) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). General vulgarity, profanity, and boorish conduct, even when extreme, are not actionable under Title VII

unless the plaintiff was subjected to such conduct because of her sex. *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). The Court therefore considers only those allegations that plausibly reflect sex-based targeting rather than general misconduct that happened to occur in a mixed-sex workplace.

The TAC alleges that Defendant Kern regularly engaged in consistent crude or vulgar commentary about women. *See e.g.*, TAC ¶¶ 34–38. The allegations describe his conduct toward female employees as "routine" and "regular" over his approximately eight-month tenure from March to November 2019, including remarks about women employees' physical appearance, the tightness of their clothing, and their sexuality. The allegations also describe instances of Kern discussing his fantasies about having sex with female employees, ratings of their sexual prowess based on appearance, and crude comments directed specifically at women employees over the age of forty. TAC ¶¶ 34-37. This conduct is facially sex-based.

Plaintiffs Moss, McClain, Barton, and Wehmuller further describe specific instances of crude and inappropriate comments or behavior directed at each of them. As to Moss, the TAC alleges Kern regularly made sexually charged remarks specifically targeting women employees, including Moss, regarding their appearance and sexuality. TAC ¶ 61. As to McClain, the TAC alleges Kern regularly included sexually charged remarks about women's appearance and sexuality in his conversations with her specifically (¶¶ 76-77), and that Hughey made inappropriate comments about another employee's breasts directly to McClain (¶ 79). As to Barton, the TAC alleges Kern asked whether a female employee "looks hot," speculated she was "a mail-order bride," and told Barton he

32

wanted to get that employee "away from her husband" (¶ 100), and separately discussed

which CCCJC employees he would have sex with directly to Barton (¶ 175) and how his

genitals are positioned when using the bathroom (¶¶ 99, 175).  As to Wehmuller, the TAC

alleges Kern "consistently" discussed vulgar and uncomfortable topics with her, including

"intimately describ[ing] his penis and testicles" to her.  TAC ¶¶ 121, 171.  Although the

Court acknowledges that the TAC contains at least two specific allegations that Kern made

vulgar comments to men, (¶¶ 36, 132), the Court is not satisfied at this stage that this

compels a conclusion that his "consistent" sexually-charged comments to Plaintiffs were

not made to them "because of their sex."  Plaintiff Goodfellow, however, does not allege

any specific instances of harassment directed towards or about her, and on that basis the

Court finds that Goodfellow has failed to state a claim for hostile work environment.

As to whether the conduct altered the terms or conditions of each plaintiff's

employment and created an abusive working environment, the Board's argument on this

element is underdeveloped, consisting of a single conclusory sentence in the motion and

no meaningful development in the reply.  [Doc. No. 74] at 14.  As a general practice, the

Court "will not consider issues adverted to in a perfunctory manner, unaccompanied by

some effort at developed argumentation."  *United States v. Wooten*, 377 F.3d 1134, 1145

(10th Cir. 2004) (internal quotations and citation omitted).  Thus, the Court declines

consider the Board's argument as to this element.[19]

---

[19] *But see Powell v. McDonough*, No. 20-CV-1223 MV/KK, 2023 WL 2743529, at *4 (D.N.M. Mar. 31, 2023) ("The Court would be perpetuating a legal fiction regarding the reality of women in the workplace if it failed to recognize that comments like these indeed affect the terms, conditions, and/or privileges of an individual's employment.").

Viewing the allegations in their totality and in the light most favorable to Plaintiffs, the Court finds that Plaintiffs Moss, McClain, Barton, and Wehmuller have alleged sufficient facts to support a finding or inference of a hostile work environment based on sexual harassment.[20] *Ballage*, 2022 WL 3716519, at *7 (denying a motion to dismiss where plaintiff alleged "multiple incidents of gender-specific, sexually charged conduct involving the same male supervisor, which made Plaintiff uncomfortable, and of which Defendant's 'upper management' was 'thoroughly aware'"); *Doe v. Hutchinson*, 728 F. App'x 829, 833–34 (10th Cir. 2018) (finding allegations plausibly suggested a pervasively hostile work environment, where the complaint alleged multiple instances of sexually explicit, gender-based comments made by a male teacher to the plaintiff and to other female students).  Count I's hostile work environment claim/theory is dismissed only as to Plaintiff Goodfellow.

### 3.  Religious Discrimination

Plaintiff McClain alleges the Board violated Title VII by discriminating against her as a Christian when she was not permitted to hold bible study on work premises during unpaid lunch breaks and was not provided a reasonable accommodation.  The parties appear to agree that under a failure-to-accommodate theory, a plaintiff must show: "(1) the employee has a bona fide religious belief that conflicts with a job requirement, (2) the

---

[20] The Board makes a brief argument that it had insufficient notice of the conduct creating the hostile work environment and that it responded appropriately once it did receive notice.  [Doc. No. 74] at 14.  This argument more appropriately goes to employer liability rather than to the elements of the underlying claim.  Whether the Board adequately received notice and whether its response was proper presents factual issues better reserved for a later stage of the litigation.

employee informed the employer of this conflict; and (3) the employer fired the employee for failing to comply with the job requirement." *Tabura v. Kellogg USA*, 880 F.3d 544, 549 (10th Cir. 2018). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192.

The Court also notes that the "exact elements for a prima facie case vary by situation, and courts have employed various formulations through the years." *Gunkel v. OU Med. Inc.*, No. CIV-23-497-PRW, 2024 WL 787895, at *3 (W.D. Okla. Feb. 26, 2024). "A more specific prima facie case formulation has sometimes been employed in religious accommodation cases" and requires "a showing that (1) [the employee] had a bona fide religious belief that conflicted with an employment requirement; and (2) [the employee's] need for an accommodation was a motivating factor in the employer's decision to take an adverse employment action against [him]." *Id.* (internal quotations and citation omitted). The Board also cites to this standard. [Doc. No. 74] at 15.

In *EEOC v. Abercrombie & Fitch Stores, Inc.*, the Supreme Court explained a "failure to accommodate" claim is not a separate claim from a disparate treatment claim but rather, a theory on which a disparate treatment claim may be based upon. 575 U.S. 768, 773 (2015). The Supreme Court concluded that "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *Id.* It further explained that Title VII prohibits actions taken with a discriminatory motive. *Id.*

With this context in mind, and under any of the above discussed recitation of elements, the Court finds that Plaintiff McClain has failed to state a claim for religious discrimination. The TAC affirmatively alleges a non-religious motive for the challenged conduct. TAC ¶ 81 ("Under the direction of Judge Hughey, and in retaliation for the complaints that McClain, along with others, had made about Defendant Kern to Defendant Hughey, Defendants Kern and Majors informed McClain that her bible study was not permitted."). McClain argues that the TAC can simultaneously support both a retaliation theory and a religious discrimination theory. That may be true in theory, but it is not true here. The Court accepts well-pled factual allegations as true, and this allegation's characterization of the prohibition as retaliatory forecloses any inference of religious motive. While a plaintiff may plead alternative legal theories, she may not simultaneously allege a specific non-religious motive for an action and maintain that the same action was motivated by religion. The TAC alleges no facts from which the Court could reasonably infer that religion was a factor in any adverse employment action at all.

Further, the TAC identifies no conflict between a bona fide religious belief and an employment requirement. *See Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000). The accommodation framework typically addresses situations in which performing a job requires something a religion forbids, or a religion requires something a job forbids such as employees whose faith requires Sabbath observance, mandatory prayer at scheduled times, or religious dress in violation of workplace rules. *See Snyder v. Arconic Corp.*, No. 3:22-CV-0027-SHL-SBJ, 2023 WL 6370785, at *5 (S.D. Iowa Aug. 31, 2023), *aff'd,* No. 23-3188, 2024 WL 3813173 (8th Cir. Aug. 14, 2024). No

such conflict is alleged here. [21]    Plaintiff McClain's religious discrimination claim is dismissed without prejudice.

### E. Age Discrimination under the ADEA

Plaintiffs McClain and Wehmuller allege the Board is liable for violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*. The ADEA makes it "unlawful for an employer to . . . discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).    Although Plaintiffs do not need to establish a prima facie case in the complaint, the Court considers the elements to help determine whether Plaintiffs' ADEA claim is plausible. *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1054 (10th Cir. 2020).    Generally, to establish a prima facie case of age discrimination, a plaintiff must prove that "1) she is a member of the class protected by the ADEA; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class." *Jones v. Oklahoma City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (alteration and internal quotation marks omitted); *see also Hare v. Denver Merch. Mart, Inc.*, 255 F. App'x 298, 301–02 (10th Cir. 2007).    "To state a plausible claim, the plaintiff must also allege that his age was a but-for cause of his termination."    *Cline v.*

---

[21] Plaintiff cites to a non-binding district court decision for the proposition that there is no requirement that a religious belief or practice must directly conflict with a job requirement. [Doc. No. 83] at 21 (citing *Equal Emp. Opportunity Comm'n v. JBS USA, LLC*, 339 F. Supp. 3d 1135, 1177 (D. Colo. 2018)).    Not only is that characterization antithetical to what that case holds, but the Tenth Circuit has issued several opinions reciting that familiar elemental framework that includes that the "bona fide religious belief [] conflicts with an employment requirement."    *See e.g.*, *Tabura v. Kellogg USA*, 880 F.3d 544, 549 (10th Cir. 2018); *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000).

*Clinical Perfusion Sys., Inc.*, 92 F.4th 926, 934 (10th Cir. 2024) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)).

The Board challenges only the but-for causation requirement. [Doc. No. 74] at 22. However, in making the argument, the Board misapplies the standard for but-for causation. The Tenth Circuit has explained that while a plaintiff must allege that age was a but-for cause of an adverse employment action, "[t]his causal standard, however, does not require plaintiffs to show that age was the sole motivating factor in the employment decision." *Cline*, 92 F.4th at 934 (internal quotations and citation omitted). "Instead, an employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as 'age was the factor that made a difference." *Id.*

Here, the Board's own Motion forecloses dismissal because the Board specifically states: the Plaintiffs "allege other women were given the positions because of their age *and* because of Kern's opinion of the physical appearances of the women who were hired." [Doc. No. 74] at 22 (emphasis in original) (citing TAC ¶¶ 189, 194). While it is true that the Third Amended Complaint does not specifically allege that "age was the factor that made a difference," the Court finds that a reasonable inference can be drawn from the allegations that age was the factor that made the difference in Defendant Kern's decisions. *See e.g.*, TAC ¶¶ 35, 83–85, 123–24, 188-89, 193-94. Specifically, Plaintiffs allege that Defendant Kern "favored and gave special treatment to younger women, and often made crude comments regarding CCCJC employees that were women over the age of 40, including some of the Plaintiffs." They further allege they were more qualified than the younger employees Kern selected for positions. Taken together and drawing all reasonable

inferences in Plaintiffs' favor, these allegations—a pattern of age-based targeting, selection of younger less qualified employees over more qualified older ones, and an express age-based motive—are sufficient to support a plausible inference that age was a but-for cause of the adverse employment decisions at the pleading stage. *See Cline*, 92 F.4th at 935–36. Plaintiff McClain and Wehmuller's ADEA claims (Count II) survive dismissal.

### F. Equal Pay Act

Plaintiff Moss alleges the Board violated the Equal Pay Act (EPA), 29 U.S.C. § 206 in Count X. She alleges she was "paid less than Defendant Mills, a man, even though they held the same job title and performed substantially similar work." TAC ¶ 270. To state a claim for an EPA violation, Moss must allege that "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances." *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997) (quoting *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir. 1993)). The equal work requirement is not construed broadly—the jobs compared must be substantially equal in terms of both effort and responsibility. *Id.* at 1364–65.

The Board argues that Moss has not adequately alleged substantially equal responsibility. The Court disagrees. Moss alleges that she and Defendant Mills held the same position of Co-Assistant Facility Director, that Moss trained Mills for that position, and that Mills was paid more than Moss even though they performed substantially similar work. TAC ¶¶ 50–51, 270–71. These allegations provide sufficient support for the

39

responsibility component of the EPA test at the pleading stage.  Whether the evidence ultimately supports that the positions were substantially equal in responsibility is a factual question not resolvable on a motion to dismiss.

The Board further argues that Moss's allegation is made in bad faith because the previous complaint alleged equal pay and the TAC now alleges unequal pay.  However, an amended complaint supersedes previous pleadings and becomes the operative pleading in the case.  *Mohammed v. Holder*, 2009 WL 529549, at *3 (D. Colo. Mar. 2, 2009) (amended complaint supersedes original complaint for purposes of consideration of motion to dismiss for failure to state a claim).  "The amended complaint must stand or fall on its own."  *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992).  The Court must accept the TAC's allegations as true at this stage.  *Twombly*, 550 U.S. at 555.  While the inconsistency between pleadings on this point is noted and may bear on credibility at a later stage of the litigation, the Court declines to dismiss the claim on this basis.  The Board's Motion to Dismiss is denied as to Count X.

### G. Disability Discrimination Under ADA and OADA

Plaintiffs McClain and Barton assert claims for discrimination against the Board under the ADA (Count IV) and OADA (Count V).  The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the . . . discharge of employees." 42 U.S.C. § 12112(a).  Similarly, the OADA prohibits employment discrimination on the basis of disability.  *See* Okla. Stat. tit. 25, § 1302.  The parties agree that the essential elements of a prima facie case of disability discrimination are the same

under the ADA and OADA. *See* Board Mot. [Doc. No. 74] at 21, Pl. Resp. [Doc. No. 83] at 28; *see also Cline v. Clinical Perfusion Sys., Inc.*, 92 F.4th 926, 931 (10th Cir. 2024).

To state a claim under the ADA, Plaintiffs must allege (1) she is disabled within the meaning of the ADA, (2) she is qualified to perform the essential functions of the job with or without accommodation, and (3) she suffered an adverse employment action because of her disability. *Lopez v. Compa Indus., Inc.*, No. 24-2041, 2024 WL 3518015, at *2 (10th Cir. July 24, 2024) (citing *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 989–90 (10th Cir. 2021)). The Board moves to dismiss on the first element alone. [Doc. No. 74] at 18–20.

Both Plaintiffs proceed under the first definitional prong of "disability"—a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A); [Doc. No. 83] at 26. Thus, to satisfy the first test for disability, "a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011). Whether a plaintiff has a recognized impairment and identifies one or more major life activities are questions of law for the court, and the question of whether an impairment substantially limits a major life activity is generally a question of fact for the jury. *Id.*

McClain alleges two bases for disability: high-risk pregnancy and anxiety. Although she characterizes her pregnancy as "high risk," her allegations identify no complications from the pregnancy or other impairments that could constitute a disability under the ADA. *See Stewart v. Kendall*, No. CIV-20-650-D, 2022 WL 49190, at *6 (W.D.

41

Okla. Jan. 5, 2022) ("[P]regnancy, by itself, is not a disability under the ADA.") (gathering cases).  Accordingly, McClain's disability discrimination claim on the basis of pregnancy fails.

As to anxiety, it appears the parties agree that generalized anxiety disorder is a recognized impairment.  *See Mayfield v. Target Corp.*, No. 5:18-CV-04036-HLT, 2019 WL 5576938, at *3 (D. Kan. Oct. 29, 2019) (citing U.S. EEOC, EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities (2008) (listing anxiety disorders as a mental impairment under the ADA)).  Defendant, however, argues that McClain does not adequately plead that her anxiety substantially limited a major life activity.  The Court agrees.  Although McClain alleges that her anxiety "substantially impacted working and other major life conditions," TAC ¶ 92, this allegation, without more, is conclusory.  McClain does not allege facts to support how her work was impacted by her anxiety or "that she was substantially limited in performing a class of jobs or broad range of jobs in various classes as compared to most people with comparable training, skills, and abilities."  *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 835 (10th Cir. 2011).  Thus, she does not plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *See also Dancause v. Mount Morris Cent. Sch. Dist.*, 590 F. App'x 27, 29 (2d Cir. 2014) (affirming dismissal of ADA claim because the plaintiff failed to allege "facts from which a court could plausibly infer" that her impairment substantially limited certain major life activities); *Iqbal*, 556 U.S. at

42

678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a claim].").[22]

As to Plaintiff Barton, she alleges that she was disabled because she was at high risk to contract COVID-19 and had high blood pressure.  Even assuming, without deciding, that these were impairments for purposes of the ADA, the only limitation Barton alleges is inability to drive a vehicle.  TAC ¶ 211.  The Tenth Circuit has expressly held that driving is not a major life activity under the ADA.  *Kellogg v. Energy Safety Servs. Inc.*, 544 F.3d 1121, 1126 (10th Cir. 2008).

Thus, both Plaintiffs McClain and Barton failed to allege that they are disabled within the meaning of the ADA, and their ADA and OADA claims (Counts IV and V) are dismissed without prejudice.

**H. Retaliation Claims Under Title VII, FMLA, ADA, and OADA**

Plaintiffs assert several claims of retaliation against the Board: Title VII retaliation (Count VI); ADA retaliation (Count VII); OADA retaliation (Count VIII); and FMLA retaliation (Count IX).[23]  Title VII, the ADA, and the FMLA all prohibit employers from discriminating against employees for opposing actions prohibited by the statutes.  *See* 42

---

[22] Plaintiffs rely on *Theron et al. v. Canadian County ex rel. Board of County Commissioners*, No. CIV-23-1176-G, 2024 WL 4332796 (W.D. Okla. Sept. 26, 2024), in which the court found similar ADA allegations sufficient at the pleading stage.  *Theron* is distinguishable.  The plaintiff in that case alleged multiple diagnosed medical conditions that specifically impacted both working and the circulatory system—a named major bodily function expressly recognized under 29 C.F.R. § 1630.2(i)(1)(ii).  McClain identifies no specific major life activity or bodily function beyond the conclusory characterization in Paragraph 92 and offers no factual allegations to support the conclusory statement that her ability to work was substantially impacted by her anxiety.

[23] Count VI is asserted by all Plaintiffs.  Counts VII, VIII, and IX are asserted by Plaintiffs McClain and Barton.

U.S.C. §§ 2000e-3(a), 12203(a); 29 U.S.C. § 2615(a)(2).  To establish a prima facie case of retaliation under these statutes, a plaintiff must show: (1) she engaged in a protected activity; (2) she suffered an adverse employment action during or after her protected activity, which a reasonable employee would have found materially adverse; and (3) there was a causal connection between the protected activity and the adverse action. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018) (ADA claim); *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (Title VII claim); *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (FMLA claim).  An adverse action is one that would dissuade a reasonable employee from engaging in the protected activity. *Lara v. Unified Sch. Dist. #501*, No. 06-4145-RDR, 2008 WL 11378842, at *6 (D. Kan. Aug. 13, 2008), *aff'd sub nom. Lara v. Unified Sch. Dist. #501*, 350 F. App'x 280 (10th Cir. 2009).  Further, the third element requires a plaintiff to show "bad intent or 'retaliatory motive' on the part of the employer." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (citation omitted).  While a plaintiff need not establish a prima facie case at the pleading stage, the elements of the claim guide the plausibility analysis. *Khalik*, 671 F.3d at 1192.

### 1.  OADA Retaliation

Plaintiffs McClain and Barton assert a claim for OADA retaliation against the Board.  However, the Oklahoma Supreme Court has held that "[t]he OADA does not 'provide any remedy to compensate an employee who suffers retaliation at the hands of an employer.'" *Davis v. Mercy Rehab. Hosp.*, No. CIV-19-561-D, 2019 WL 13113533, at *4 (W.D. Okla. Nov. 20, 2019) (quoting *Edwards v. Andrews*, 382 P.3d 1045, 1047 (Okla.

44

2016)).  As a result, numerous courts have held that an "OADA retaliation claim is not cognizable."  *Theron v. Canadian Cnty. ex rel. Bd. of Cnty. Comm'rs*, No. CIV-23-1176-G, 2024 WL 4332796, at \*6 (W.D. Okla. Sept. 26, 2024) (gathering cases); *see also Lewis v. Tyson Foods, Inc.*, No. CIV-22-918-J, 2023 WL 12250122, at \*5 (W.D. Okla. Feb. 2, 2023).  Accordingly, Count VIII is dismissed.

### 2.  *ADA Retaliation and FMLA Retaliation*[24]

Plaintiffs McClain and Barton's ADA and FMLA Retaliation claims stem from the same general factual allegations so the Court analyzes them together.  Specifically, they allege that they both took FMLA leave and upon their return, their positions were "taken away" and they were offered positions "in the kitchen."  TAC ¶¶ 248–251, 258–266.  The Board moves to dismiss Counts VII and IX on the grounds that Plaintiffs have not adequately plead that the adverse action was causally connected to their taking leave, pointing specifically to Plaintiffs' own allegation that the kitchen offer was "continued retaliation" for reporting Kern—not retaliation for exercising FMLA or ADA rights.  [Doc. No. 74] at 24.  The Board further argues that the allegations are conclusory.  In response, Plaintiffs point to the same allegations and argue that there is sufficient factual support to infer a causal connection.  The Court is not persuaded.

The allegations related to causal connection merely state a "causal connection exists between Plaintiff's protected activity and adverse action."  TAC ¶¶ 262, 266; *see also id.*

---

[24] Although the Court holds Plaintiffs' underlying ADA disability discrimination claim fails, Plaintiffs' ADA retaliation claim is not automatically foreclosed.  *See Heiman v. United Parcel Serv., Inc.*, 12 F. App'x 656, 664 (10th Cir. 2001).

¶¶ 249, 251. There is no additional factual development or support related to causation other than the seemingly contradictory allegation that the kitchen offer was a result of ongoing retaliation for reporting misconduct. Such threadbare recitals do not suffice. *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Accordingly, even in the light most favorable to Plaintiffs, the Court finds Plaintiffs McClain and Barton have failed to state claims for ADA and FMLA retaliation and Counts VII and IX are dismissed.

### 3. *Title VII Retaliation*

All Plaintiffs allege a claim for Title VII retaliation against the Board. A prima facie case of retaliation requires an employee to show: "(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008).

"Title VII provides two separate ways in which an employee can engage in protected activity for the purpose of a retaliation claim." *New v. Bd. of Cnty. Comm'rs for Tulsa Cnty.*, 434 F. Supp. 3d 1219, 1225 (N.D. Okla. 2020). Under the "participation clause," an employer may not retaliate against an employee "'because [the employee] has . . . participated in any manner in an investigation, proceeding, or hearing under' Title VII." *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1151 (10th Cir. 2008). The participation clause protects an employee in providing information as part of a formal investigation by

46

the EEOC and it does not apply to participation in an internal investigation by the employer. *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 n.2 (5th Cir. 2016); *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 48–49 (2d Cir. 2012); *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 747 (7th Cir. 2010). The "opposition clause" protects an employee who has opposed any practice that is made unlawful under Title VII. *Vaughn*, 537 F.3d at 1151. A plaintiff is not required to show that she reported an actual violation of Title VII, but protected activity occurs when a plaintiff shows a "'reasonable good-faith belief that' she was opposing discrimination." *Fassbender v. Correct Care Solutions, LLC*, 890 F.3d 875, 891 (10th Cir. 2018) (quoting *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015–16 (10th Cir. 2004)). Thus, "[p]rotected activities under Title VII can range from filing formal charges to voicing informal complaints to superiors." *Sanderson v. Wyoming Highway Patrol*, 976 F.3d 1164, 1171 n.2 (10th Cir. 2020) (internal quotations and citation omitted).

As to the first element, the Board argues that the complaints made by Plaintiffs Moss and Hardaway do not constitute protected activity. However, these Plaintiffs allege they complained to Defendant Judge Hughey about the environment at CCCJC and misconduct of Defendant Kern prior to receiving adverse employment action. TAC ¶¶ 81, 86–90, 128-141. The Board provides no authority to explain why this conduct would not be a protected activity. *See* [Doc. No. 74] at 16–18; *see also Fassbender*, 890 F.3d at 891 (reporting sexual harassment is a "protected activity" if the reporter reasonably believes she is reporting discrimination). Resolving all reasonable inferences in Plaintiffs' favor, the

Court finds that these Plaintiffs have plausibly alleged they participated in a protected activity. *Sanderson*, 976 F.3d at 1171.

The Board does not challenge the second element but does argue that Plaintiffs have not plausibly alleged causation under the third element. The Board notes that Plaintiffs McClain, Wehmuller, and Barton allege they were constructively discharged almost two years after complaining about Defendant Kern, and Plaintiff Goodfellow was terminated more than a year after complaining about Defendant Kern. Aside from making these observations, the Board provides no argument or authority to support its apparent implication that this gap in temporal proximity alone precludes an inference of causation. [Doc. No. 74] at 17; *but see O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (additional circumstantial evidence may satisfy causation despite a temporal gap). But even so, the Court notes that the Board's framing of the claim as limited to a single act of complaining about Kern followed by a single act of constructive discharge or termination materially mischaracterizes the TAC which pleads ongoing retaliatory conduct by multiple defendants. Viewing the TAC in the light most favorable to Plaintiffs, there are sufficient allegations to reasonably infer that the adverse actions stemmed from Plaintiffs engaging in a protected activity. The Board's Motion to Dismiss is denied as to Count VI.

### I. Burk Tort

All Plaintiffs asserted a claim against the Board for retaliatory termination under *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989). The Board moved to dismiss this claim on multiple grounds. [Doc. No. 74] at 29–31. Plaintiffs did not respond to these

arguments or address this claim whatsoever.  Accordingly, the claim is deemed abandoned and Count XII is dismissed without prejudice.  *Siegfried*, 38 F.4th at 1282.

## IV.    Conclusion

IT IS THEREFORE ORDERED that Defendant Judge Bobby Hughey's Motion to Dismiss and Brief in Support [Doc. No. 76] is GRANTED.  All claims against Defendant Judge Hughey in his official and individual capacities are DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that Defendant Daniel Kern's Motion to Dismiss and Brief in Support [Doc. No. 77] is GRANTED IN PART and DENIED IN PART.  The motion is DENIED as to Plaintiff Moss's First Amendment free speech retaliation claim against Defendant Kern in his individual capacity (Count XIII).  All remaining claims against Defendant Kern in his official and individual capacities are DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that Defendant Board of County Commissioners of Canadian County's Motion to Dismiss and Brief in Support [Doc. No. 74] is GRANTED IN PART and DENIED IN PART.  The motion is DENIED as to: (1) Plaintiff Moss's Title VII sex discrimination claims for disparate treatment and hostile work environment (Count I); (2) Plaintiffs McClain, Barton, and Wehmuller's Title VII hostile work environment claims (Count I); (3) Plaintiffs McClain and Wehmuller's ADEA age discrimination claims (Count II); (4) Plaintiffs Moss, McClain, Barton, Goodfellow,

Wehmuller, and Hardaway's Title VII retaliation claims (Count VI); and (5) Plaintiff Moss's Equal Pay Act claim (Count X). The remaining claims against the Board are DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that Defendants NaCole Majors, Cedric Mills, and Melanie Johnson's Motion to Dismiss and Brief in Support [Doc. No. 75] is GRANTED. All claims against Defendants Majors, Mills, and Johnson in their official and individual capacities are DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that Plaintiff Robert Fletcher's claims are DISMISSED WITHOUT PREJUDICE as to all Defendants for failure to timely effect service pursuant to Rules 4(m) and 12(b)(5) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that, as a result of the foregoing, the following claims remain:

- As against Defendant Board:

    o Plaintiff Moss's Title VII disparate treatment claim (Count I);

    o Plaintiffs Moss, McClain, Barton, and Wehmuller's Title VII hostile work environment claims (Count I);

    o Plaintiffs McClain and Wehmuller's ADEA claims (Count II);

    o Plaintiffs Moss, McClain, Wehmuller, Barton, Goodfellow, and Hardaway's Title VII retaliation claims (Count VI);

    o and Plaintiff Moss's Equal Pay Act claim (Count X).

50

- As against Defendant Kern in his individual capacity: Plaintiff Moss's First Amendment free speech retaliation claim (Count XIII).

IT IS SO ORDERED this 25th day of March, 2026.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE